UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
THE CITY OF NEW YORK,

               Plaintiff,                    **MEMORANDUM & ORDER**

-against-                           06-CV-3620 (CBA)

MILHELM ATTEA & BROS., INC.,
DAY WHOLESALE, INC.,
GUTLOVE & SHIRVINT, INC.,
MAURO PENNISI, INC.,
JACOB KERN & SONS, INC.,
WINDWARD TOBACCO, INC., and
CAPITAL CANDY COMPANY, INC.,

               Defendants.
--------------------------------------------------------x
AMON, United States District Judge.

## INTRODUCTION

       The City of New York has brought an Amended Complaint against the above-captioned

defendants, a group of cigarette wholesalers who are state-licensed cigarette stamping agents.

The principal contention of the City is that the wholesalers violate the Contraband Cigarette

Trafficking Act ("CCTA"), 18 U.S.C. § 2341 <u>et seq.</u>, by shipping in excess of 10,000 unstamped

cigarettes to reservation retailers who re-sell the cigarettes to the public.  According to the City,

New York Tax Law § 471 requires that cigarettes sold to Native Americans for re-sale to the

public must be taxed, and that the defendant agents are responsible for collecting the tax by

purchasing tax stamps from the New York State Tax Commission and affixing them to cigarette

packages.   The City brings additional state law claims under New York Tax Law § 484, the

Cigarette Marketing Standards Act, as well as a public nuisance claim.  Defendants have moved

to dismiss the Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1),

12(b)(6) and 12(b)(7).  For the reasons set forth below, defendants' motions to dismiss are denied.

## I.      Background

The following facts are undisputed.

### A.      New York State's Cigarette Tax Scheme

Article 20 of the New York Tax Law imposes a tax on all cigarettes possessed for sale or use in New York State, except for those cigarettes that New York is "without power" to tax.  See N.Y. Tax L. § 471 ("There is hereby imposed and shall be paid a tax on all cigarettes possessed in the state by any person for sale, except that no tax shall be imposed on cigarettes sold under such circumstances that this state is without power to impose such tax . . . ."); Dep't of Taxation & Fin. of N.Y. v. Milhelm Attea & Bros., Inc., 512 U.S. 61 (1994) (citing N.Y.Tax L. § 471(1)). New York's cigarette tax has two components: the cigarette tax imposed on possession for sale in the State pursuant to N.Y. Tax Law § 471; and the cigarette use tax imposed pursuant to N.Y. Tax Law § 471-a.  See N.Y. Tax L. §§ 471, 471-a.  Under § 471, cigarettes are presumed taxable.  N.Y. Tax L. § 471 (stating that "all cigarettes within the state are subject to tax until the contrary is established, and the burden of proof that any cigarettes are not taxable hereunder shall be upon the person in possession thereof.").  New York City also imposes a cigarette tax pursuant to authority delegated by the state and its own regulations.  See N.Y.C. Admin. Code § 11-1302(a)(1).

The New York State tax on cigarettes is presently $1.50 per pack; the City tax is $1.50 per pack.  State and local sales tax is $0.33 per pack.  The total tax on a pack of cigarettes sold in New York City, therefore, is $3.33 per pack, or $33.30 per carton.

Under New York law, taxes on cigarettes are largely collected through a system of pre-payments, and then passed along the distribution chain to the consumer. See N.Y. Tax Law § 471(2); In re New York Assoc. of Convenience Stores v. Urbach, 92 N.Y.2d 204, 209 (N.Y. 1988). Wholesalers, such as the defendants in this action, may be licensed by New York as "stamping agents" pursuant to New York Tax Law § 472. N.Y. Tax L. § 472(2) ("The commissioner may license dealers in cigarettes. . . as agents to buy or affix stamps to be used in paying the tax herein imposed. . . ."). A stamping agent pre-pays cigarette taxes and affixes a tax stamp to each package of cigarettes; when the tax is paid, any dealer subsequently receiving the stamped cigarettes is not required to purchase and affix tax stamps. See id. § 471(1). State-licensed stamping agents are permitted to sell tax-stamped cigarettes and other tobacco products to registered New York retailers and licensed wholesalers. See id. §§ 472(1), 480(1)(a).

Federal and state governments lack authority to tax cigarettes sold to members of Native American tribes for their own consumption. Thus, cigarettes to be consumed on the reservation by enrolled tribal members are tax-exempt. Milhelm Attea & Bros., Inc., 512 U.S. at 64 (citing Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation, 425 U.S. 463, 475-481 (1976)). However, "on-reservation cigarette sales to persons other than reservation Indians . . . are legitimately subject to state taxation." Id. (citing Washington v. Confederated Tribes of Colville Reservation, 447 U.S. 134, 160-161 (1980)).

## B. Forbearance Policy

Whether and how to collect taxes on cigarettes sold on reservations to persons other than Native American tribe members has been the subject of ongoing debate in New York. As described above, New York wholesalers generally collect cigarette sales tax by selling cigarettes

affixed with tax stamps to retailers, and remitting the tax payments to the State. However, the New York State Department of Taxation and Finance (the "Department") has allowed wholesalers to sell unstamped cigarettes to Native American tribes, without requiring an accounting to reflect that the unstamped cigarettes are being sold only to tribe members. See State of New York Commissioner of Taxation and Finance, Advisory Opinion Petition No. M06316A, March 16, 2006 (hereinafter "Advisory Opinion").

In 1988, the Department adopted regulations requiring reservation retailers to pay sales and excise taxes on cigarettes. The regulations allowed retailers to purchase a limited quantity of untaxed cigarettes based on estimates of demand by tribe members. See In re New York Assoc. of Convenience Stores v. Urbach, 712 N.Y.S.2d 220, 221 (N.Y. 2000). Any cigarettes sold above the allotment were subject to applicable state taxes. Id. The regulations were challenged by reservation retailers and suspended by the Department pending outcome of the related litigation. Id. The Supreme Court ultimately upheld the Department's regulations, concluding that the state could lawfully tax sales by reservation retailers to non-tribe members. See Milhelm Attea & Bros., Inc., 512 U.S. at 61. The Department, however, did not reinstate its regulations after the Supreme Court's decision in Milhelm.

In 1997, Governor George Pataki directed the repeal of the Department's 1988 regulations, and proposed new legislation that would allow reservation retailers to sell tax-free cigarettes. The 1988 regulations were repealed on April 28, 1998. In re New York Assoc. of Convenience Stores v. Urbach, 92 N.Y.2d at 213-14. Governor Pataki's proposed legislation was never passed.

In 2005, New York passed a tax law that would require wholesalers to sell only stamped cigarettes to Native American tribes. See N.Y. Tax Law § 471-e. Under the new scheme, tribe members would be granted reimbursement coupons on a quarterly basis. Id. These coupons would allow the possessor to purchase stamped cigarettes without paying taxes. However, the regulations required by § 471-e were never adopted, and a New York Supreme Court decision has preliminarily enjoined the section's enforcement. See Day Wholesale v. State of New York, No. 06-7688, slip op. at 5 (N.Y. Sup. Ct. Jan. 2, 2007) (holding that § 471-e "is not in effect because on March 1, 2006 and subsequent thereto there has not been actions taken or rules and regulations issued that would be necessary to implement the provisions of this act").

On March 16, 2006, The Department issued an Advisory Opinion in response to a request by Milhelm Attea & Brothers. The Advisory Opinion noted that the Department "has a long-standing policy of allowing untaxed cigarettes to be sold from licensed stamping agents to recognized Indian Nations and reservation-based retailers making sales from qualified Indian reservations." Advisory Opinion at 3. The Department indicated that it has "no intention to alter" its policy of forbearance, but "if the Department decides to revise its policy in the future, it will provide adequate notice to all affected stamping agents." Id. at 4. Wholesalers continue to sell unstamped cigarettes to reservation retailers.

<u>DISCUSSION</u>

I.      **The City's Claims and the Defendants' Arguments**

In view of the above-described federal and state statutory schemes, the City contends that defendant wholesalers violate the Contraband Cigarette Trafficking Act ("CCTA"), 18 U.S.C. § 2341 et seq., by shipping unstamped cigarettes to reservation retailers, who re-sell the cigarettes

to the public.  According to the City, N.Y. Tax Law § 471(1)-(2) provides that cigarettes sold to Native Americans for re-sale to the public must be taxed, and that the defendant agents are required to purchase tax stamps and affix them to cigarette packages.  The City contends that these cigarettes are "contraband" within the meaning of the CCTA because the State "requires" that stamps be placed on packages of cigarettes by the wholesaler defendants, and the cigarettes at issue bear no evidence of the payment of state cigarette taxes.  18 U.S.C. § 2341(2).

As a result of defendants' alleged failure to pre-pay taxes and affix stamps, reservation retailers supplied by defendants are able to sell cigarettes at prices "well below" those of retailers selling stamped cigarettes.  (Am. Compl. ¶ 3.)  According to the City, the lower price of unstamped cigarettes, supplied by defendants, induces "large numbers of City residents" to purchase them in retail stores outside of the City as well as "on the street, over the Internet, or by mail, fax, and telephone."  (Id. ¶ 4.) The City alleges that sales of unstamped cigarettes replace sales that would otherwise generate tax revenue for the State and City, costing the City "millions of dollars." (Id. ¶ 5.)

The City brings additional state law causes of action: (1) a claim under N.Y. Tax Law § 484, the Cigarette Marketing Standards Act ("CMSA"), and (2) a public nuisance claim.  As part of the relief requested, the City seeks to enjoin the defendants' sale of unstamped cigarettes and to recover lost tax revenue.

Defendants have moved to dismiss this case pursuant to Fed. R. Civ. P. 12(b)(1).  They contend that the City lacks standing to maintain its CCTA claim and that the Court must abstain from consideration of the issues raised in this case.  Defendants also summarily contend that

until the State's "forbearance policy changes," there is "no case or controversy to adjudicate in federal court."

Defendants further argue, pursuant to Fed. R. Civ. P. 12(b)(6), that the City fails to state a claim under the CCTA because, even if the provisions of N.Y. Tax Law § 471 govern sales of cigarettes to reservation retailers, the State does not "require" that stamps be placed upon cigarettes sold to them for re-sale to the public in view of New York's "forbearance policy" on Native American cigarette taxation. This forbearance policy, defendants contend, also precludes the City's state law claim under New York's CMSA. Defendants also move to dismiss the City's public nuisance claim. Additionally, defendants argue that the City lacks the legal capacity to sue defendants, licensed stamping agents, acting on behalf of the State.

Finally, defendants contend, pursuant to Fed. R. Civ. P. 12(b)(7), that the City's claims must be dismissed because Native American tribes located in New York, as well as New York State, are necessary and indispensable parties to this suit.

The Court considers each of the defendants' arguments below.

## II.     Jurisdictional Issues

### A.     Standard of Review

Fed. R. Civ. P. 12(b)(1) provides for dismissal when a federal court lacks jurisdiction over the subject matter of a claim. When a defendant moves to dismiss a cause of action pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Raila v. United States, 355 F.3d 118, 119 (2d Cir. 2004). Where a defendant raises a bona fide challenge to subject matter jurisdiction, a plaintiff has the burden of proving that jurisdiction is proper by a preponderance of the evidence.

See Luckett v. Bure, 290 F.3d 493, 497 (2d Cir. 2002); see also London v. Polishook, 189 F.3d 196-99 (2d Cir. 1999) ("[I]t is the affirmative burden of the party invoking [federal subject matter] jurisdiction . . . to proffer the necessary factual predicate–not simply an allegation in a complaint–to support jurisdiction.") (citation omitted).  Generally, a court considers jurisdictional issues before any other motions to dismiss "since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined."  U.S. ex rel. Kreindler & Kreindler v. United Technologies Corp., 985 F.2d 1148, 1155-56 (2d Cir. 1993).

**B.      Standing**

As standing is "a limitation on the authority of a federal court to exercise jurisdiction," it is properly addressed within the context of a Rule 12(b)(1) motion.  Alliance For Envt'l Renewal, Inc. v. Pyramid Crossgates Co., 436 F.3d 82, 89 n.6 (2d Cir. 2006).  The burden of demonstrating standing falls to the party invoking federal jurisdiction.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  Defendants contend that the City lacks standing because it has failed to allege an injury in fact that is fairly traceable to the defendants' conduct, and because any injury the City has sustained will not be redressed by the requested relief.   Article III standing requires the plaintiff to demonstrate: (1) an injury in fact, which is concrete and particularized; (2) a causal connection between the injury and the conduct complained of so that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely the injury will be redressed by a favorable decision.  Lujan, 504 U.S. at 560-61.  Standing must be established before a court decides a case on the merits.  Alliance for Envt'l Renewal, 436 F.3d at 85.

As described above, the City alleges that it has suffered "an enormous tax loss" due to defendants' sale of unstamped cigarettes to reservation sellers. (Am. Compl. ¶ 44.) According to the City, the lower price of unstamped cigarettes, supplied by defendants, induces "large numbers of City residents" to purchase them in retail stores outside of the City as well as "on the street, over the Internet, or by mail, fax, and telephone." (Id. at ¶ 4.) The complaint states that "[t]he vast majority of sales of unstamped cigarettes replace sales that would otherwise generate tax revenue for the State and, in significant part, for the City. Sales of unstamped cigarettes annually cost New York City millions of dollars in tax revenues." (Id. ¶ 5.)

Defendants contend that the City's injury of lost tax revenue cannot be traced to their conduct. First, defendants correctly note that they are not required to pre-collect City taxes on cigarettes sold to reservation retailers. New York State tax legislation authorizes the pre-collection of State cigarette taxes by licensed stamping agents. See N.Y. Tax L. § 471. The State also authorizes the pre-collection of City cigarette taxes on cigarettes sold at retail or used in New York City. See N.Y. Unconsol. Law § 9436. Pursuant to this state legislation, the New York City Administrative Code requires stamping agents to affix City tax stamps on cigarettes prior to delivery of those cigarettes to any dealer in New York City. N.Y.C. Admin. Code § 11-1305(a). Defendants' sales to reservation retailers, located outside of New York City, fall outside the scope of the pre-collection scheme for City taxes. Defendants additionally argue that even if they pre-collected the state tax of 15 dollars per carton, cigarettes sold by reservation retailers would still be 15 dollars cheaper outside of New York City because of the non-

applicability of the City tax. Thus, defendants argue that the lost sales of which the City complains would continue to occur.[1]

The Court finds that the City has carried its burden to show Article III standing by demonstrating an injury fairly traceable to the defendants' alleged actions. The City does not claim that defendants are required to affix City tax stamps to cigarettes sold to reservation retailers outside of New York City. Rather, the City asserts that its injury stems from defendants' failure to pre-collect <u>state</u> taxes, because cigarettes sold without state tax stamps are less expensive (by 15 dollars per carton) than those sold with stamps. The submissions by the City support a finding of an injury that may be fairly traced to the defendants' conduct. The complaint alleges that, by supplying retailers with these discounted cigarettes, City purchasers are drawn out of the city to those retailers. (Am. Compl. ¶ 4.) The complaint further states that tax-free sales supplied by defendants replace taxed sales that would have taken place in New York City, thereby depriving the City of valuable tax revenue. (<u>Id.</u> ¶ 5.)

From the facts alleged, it appears the City could demonstrate that the price differential created by defendants' sale of untaxed cigarettes to reservation retailers impacts the market in a way that deprives the City of substantial tax revenue. The City's injury may be redressed by requiring the defendants to stamp cigarettes sold to reservation retailers for re-sale to the public, bridging by half the price differential between cigarettes sold in the City and those by reservations retailers. In view of the sufficiency of the City's allegations, it is not necessary on this motion to resolve the accuracy of allegations on the economics of cigarette purchasing, or

---

[1]    Defendants' motion makes a facial challenge to the City's Article III standing that appears to accept the jurisdictional facts pleaded, challenging only their sufficiency. <u>See Alliance for Envt'l Renewal</u>, 436 F.3d at 88 n.7.

the parties' contention that a remittance policy including reservations retailers may be difficult to implement.

Additionally, the Court notes that the CCTA explicitly provides municipalities with standing to challenge violations of the statute. Section 2346(b)(1) of Title 18 states:

> A State, through its attorney general, a local government, through its chief law enforcement officer (or a designee thereof), or any person who holds a permit under chapter 52 of the Internal Revenue Code of 1986, may bring an action in the United States district courts to prevent and restrain violations of this chapter by any person . . . .

The Court, therefore, concludes that the City has alleged sufficiently the required elements for standing.

## C.     Abstention

A motion to dismiss based on the abstention doctrine is also considered as a motion made pursuant to Rule 12(b)(1). See Republic of Colombia v. Diageo North Am. Inc., 531 F. Supp. 2d 365, 381 (E.D.N.Y. 2007) (citing 5B Wright & Miller § 1350 ("Courts have recognized a variety of other defenses that one normally would not think of as raising subject matter jurisdiction questions when considering a Rule 12(b)(1) motion, including claims that . . . the subject matter is one over which the federal court should abstain from exercising jurisdiction")).

Although federal courts have a "virtually unflagging obligation" to exercise their jurisdiction, Colorado River, 424 U.S. 800, 817 (1976), there are several traditional circumstances in which courts should abstain. See Younger v. Harris, 401 U.S. 37, 43-54 (1971) (abstention appropriate where there is a pending state criminal proceeding); Burford v. Sun Oil Co., 319 U.S. 315, 317-34 (1943) (abstention appropriate to avoid interference with attempts to establish coherent state policy and issues of peculiarly local concern); Railroad Comm'n v.

Pullman Co., 312 U.S. 496, 498-501 (1941) (abstention appropriate to avoid unnecessary resolution of a constitutional issue that might be mooted by state court construction of a state law); Colorado River Water Conservation Dist. v. United States, 424 U.S. at 817-818 (abstention appropriate where there is concurrent state court litigation whose resolution could result in comprehensive disposition of the litigation). Defendants argue that this Court should abstain from exercising its jurisdiction because the principles set forth in the Burford and Colorado River decisions are applicable to issues of whether and how to collect taxes on cigarettes sold by Native American retailers to non-Native Americans.

### 1. __Burford__ Abstention

The Burford doctrine applies: (1) where there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." Colorado River, 424 U.S. at 814 (citing Burford v. Sun Oil Co., 319 U.S. at 315; Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25 (1959)). The Second Circuit has identified three factors pertinent to the determination of whether federal review of a case would be disruptive of state efforts to establish a coherent policy: (1) the degree of specificity of the state regulatory scheme; (2) the need to give one or another debatable construction to a state statute; and (3) whether the subject matter of the litigation is traditionally one of state concern. See Bethpage Lutheran Serv., Inc. v. Weicker, 965 F.2d 1239, 1243 (2d Cir. 1992). The Second Circuit cautions, however, that "[e]very abstention

case is to be decided upon its particular facts and not with recourse to some mechanical checklist." Id. at 1245.

Burford abstention is appropriate, defendants contend, because the regulation and taxation of cigarettes sold on Native American reservations to non-Native Americans is a complicated problem that the State has attempted to address through legislation and regulation. According to the defendants, this Court's involvement would create conflict and impair the ability of New York State to formulate and execute its domestic policy.

The Court recognizes that the taxation question at issue in this case has been the subject of state legislation, regulation, and litigation. However, abstention is an "extraordinary and narrow exception" to the generally broad duty of federal courts to exercise jurisdiction. Colorado River, 424 U.S. at 813 (citation omitted). Burford abstention is not appropriate in the instant case, in which the City has brought a claim under a federal statute that seeks to protect federal interests by reference to applicable state tax law. See, e.g., Gray Poplars Inc., v. 1,371,100 Assorted Brands of Cigarettes, 282 F.3d 1175, 1177 (9th Cir. 2002) ("The fact that the CCTA refers to state law of taxation does not make it any less a federal statute."). The CCTA was enacted explicitly to address what Congress regarded as a federal concern for the problem of trafficking in untaxed cigarettes, because the states had theretofore been unable to address that problem themselves. See S. Rep. No. 95-962 (2d Sess. 1978), reprinted in 1978 U.S.C.C.A.N. 5518, 5526-30 ("We continue to believe that many of the states most affected have not made serious commitments to the enforcement effort in this area. . . .We continue to believe strongly that primary efforts to stop cigarette smuggling must be made by the states affected. However, we recognize that federal legislation in aid of state enforcement effort may be desirable, if not

essential, in light of the interstate nature of the problem.").  Although New York has a regulatory scheme that addresses the taxation of cigarettes, the CCTA contemplates federal interaction with that scheme through its incorporation of state law.

The Court also notes that the state regulatory scheme at issue in this case does not display the same kind of complexity and specificity at issue in Burford and other cases in which this Circuit has found abstention to be appropriate.  See Levy v. Lewis, 635 F.2d 960, 963 (2d Cir. 1980) (holding that Burford abstention was appropriate in part because "New York State has a complex administrative and judicial system for regulating and liquidating domestic insurance companies"); Bethpage Lutheran Servs., Inc., 965 F.2d at 1243 (finding Burford abstention appropriate in view of the "breadth and specificity of the state Medicaid regulations" which included "eighteen regulatory sections governing, substantively and procedurally, the determination of rates and the inclusion of particular costs").  Although Burford is concerned with protecting complex state administrative processes from undue federal interference, "it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy."  New Orleans Public Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 362 (1989) (citing Colorado River, 424 U.S., at 815-816)).  Burford abstention, therefore, is not appropriate in this case.

## 2.     **Colorado River Abstention**

Colorado River abstention permits stay or dismissal of a federal suit when there is a concurrent state proceeding parallel to the federal proceeding.  Colorado River, 424 U.S. at 817-818.  In determining whether Colorado River abstention is applicable, a court should consider: (1) whether the controversy involves property over which one of the courts has assumed

jurisdiction; (2) whether the federal forum is less inconvenient than the other for the parties; (3) whether staying or dismissing the federal action will avoid piecemeal litigation; (4) the order in which the actions were filed and whether proceedings have advanced more in one forum than in the other, see id.; see also Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 22 (1983); (5) whether federal law provides the rule of decision, see id. at 23, 25-26; and (6) whether the state procedures are adequate to protect the plaintiff's federal rights, see id. at 26-27; see also Woodford v. Community Action Agency of Greene County, Inc., 239 F.3d 517, 522 (2d Cir. 2001).

According to the defendants, Colorado River abstention is appropriate because of a pending proceeding in Superior Court of Erie County, Day Wholesale Inc. v. New York, Index No. 2006/7668 (Sup. Ct., Erie Co. Jan. 2, 2007). As discussed above, that case preliminarily enjoined the enforcement of N.Y. Tax Law § 471-e, a section that explicitly provides for the collection of taxes on cigarettes sold by reservation retailers to non-Native Americans. See supra, at 6.

Colorado River abstention is not applicable because there is not sufficient parallelism between the issues in the Day Wholesale lawsuit and the instant case. In this action, the City seeks to compel defendants' compliance with N.Y. Tax Law § 471 through the CCTA; the applicability of § 471-e is not at issue. In contrast, the question of whether and how § 471-e is in effect is central to Day Wholesale. Although both lawsuits relate to taxation of reservation retailers who re-sell to the general public, some commonality in subject matter alone is insufficient to support abstention under the Colorado River doctrine. Alliance of Am. Insurers v. Cuomo, 854 F.2d 591, 603 (1998) ("While there may be some overlap in subject matter, it is not

sufficient to make these actions concurrent.").  Accordingly, the Court finds that <u>Colorado River</u> abstention is not appropriate.[2]

## III.  Failure to State a Claim

### A.  Standard of Review

Pursuant to Fed. R. Civ. P. 12(b)(6), a complaint may be dismissed "for failure of the pleading to state a claim upon which relief can be granted."  A complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); <u>see also</u> <u>Erickson v. Pardus</u>, 127 S.Ct. 2197, 2200 (2007).  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the. . . claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 127 S.Ct. at 2200 (citing <u>Bell Atl. Corp. v. Twombly</u>, 127 S.Ct. 1955, 1965-66 (2007)).  The Second Circuit has observed that the standard articulated by the Supreme Court in <u>Twombly</u> remains somewhat uncertain but notes, "at a bare minimum, the operative standard requires the 'plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level.'" <u>Goldstein v. Pataki</u>, 516 F.3d 50, 56 (2d Cir. 2008) (<u>Twombly,</u> 127 S.Ct. at 1965; quoting <u>ATSI Commc'ns., Inc. v. Shaar Fund, Ltd.,</u> 493 F.3d 87, 98 (2d Cir. 2007)).

When determining the sufficiency of a pleading for Rule 12(b)(6) purposes, "consideration is limited to the factual allegations in plaintiffs' [ ] complaint, which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or

---

[2]      Defendants also argue summarily that the Court lacks jurisdiction over the City's CCTA claim because there is no Article III "case or controversy," due to the existence of the Department's "forbearance policy."  The Court rejects this contention.  <u>See</u> <u>infra,</u> at 19-23.

of which plaintiffs had knowledge and relied on in bringing suit." Brass v. Am. Film Techs., Inc., 987 F.2d 142, 150 (2d Cir. 1993) (citations omitted). The Court will draw all reasonable inferences in the plaintiff's favor. Chambers v. Time Warner Inc., 282 F.3d 147, 152 (2d Cir. 2002).

**B.      Capacity**

Defendants challenge the City's capacity to bring this suit because they contend that neither the CCTA nor the CMSA authorizes suit against a state-licensed stamping agent. They claim that the State's cigarette tax collection scheme, including its forbearance policy, is executed by stamping agents. By bringing claims against these state-licensed actors, defendants argue that the City seeks to impermissibly challenge State action.

Capacity to sue is a state law issue. Fed. R. Civ. P. 17(b); Yonkers Comm'n on Human Rights v. City of Yonkers, 654 F.Supp. 544, 551 (S.D.N.Y. 1987). As a general rule, municipalities in New York "lack capacity to mount constitutional challenges to acts of the State and State legislation." City of New York v. State of New York, 86 N.Y.2d 286, 289 (N.Y. 1995); see also In re Cty. of Oswego v. Travis, 16 A.D.3d 733, 735 (N.Y. App. Div. 2005) ("[M]unicipal corporate bodies, as subdivisions of the state, cannot contest the actions of the state which affect them in their governmental capacity or as representatives of their inhabitants."). This limitation flows from "judicial recognition of the juridical as well as political relationship between those entities and the State." City of New York v. State of New York, 86 N.Y.2d at 289.

Defendants' capacity argument is not persuasive. As an initial matter, the City has not filed suit against the State, nor is it seeking to invalidate state legislation. Defendants cite no

authority to support the proposition that state licensees assume attributes of the state for the purposes of the capacity doctrine. To the contrary, New York case law suggests that sovereignty does not easily transfer from the State. See, e.g., John Grace & Co., Inc. v. State Univ. Const. Fund, 44 N.Y.2d 84, 88, 404 N.Y.S.2d 316, 316 (N.Y. 1978) ("The mere fact that the Fund is an instrumentality of the State, and as such, engages in operations which are fundamentally governmental in nature does not inflexibly mandate a conclusion that it is the State or one of its agencies."); In re Plumbing, Heating, Piping, & A.C. Contrs. Ass'n v. New York State Thruway Auth., 5 N.Y.2d 420, 424 185 N.Y.S.2d 534, 537 (N.Y. 1959) ("[A] public authority enjoys an existence separate and apart from the State, even though it exercises a governmental function"). Although state-licensed stamping agents execute a function endorsed by the State, this role does not necessarily immunize them from suit by a municipality.

Defendants' reliance on Cty. of Seneca v. Eristoff, No. 3172-06 (N.Y. Sup. Ct. 2006) is misplaced. In that case, a county filed suit against the State Tax Commissioner, as well as four of the seven defendants named in the instant case, to compel the enforcement of N.Y. Tax Law § 471-e. The court dismissed the action against the Commissioner on capacity grounds; however, the decision was limited to a finding that the county lacked capacity to sue the New York State Tax Commissioner. Id. ("Respondents seek to dismiss the proceeding on the threshold issue that petitioner Seneca County does not have the capacity to bring an action against the New York State Tax Commissioner Eristoff to compel enforcement of general taxes.") The Seneca court did not hold that the county was barred from filing suit against defendant wholesalers, as state-licensed stamping agents.

The Court concludes, therefore, that the City has the capacity to maintain its suit against the defendant wholesalers.

## C.    CCTA Claims

The CCTA makes it "unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes" 18 U.S.C. § 2342(a).  Contraband cigarettes are defined as "a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes."  Id. § 2341(2).  A violation of a state or local cigarette tax law, therefore, is a predicate to a CCTA violation; the state or local government must "require" a stamp to be placed on cigarette packages as evidence of payment of an applicable tax.  Native Americans are not among the specifically-exempted categories of people, set forth in the CCTA, that may possess unstamped cigarettes.  Id. § 2341(2).  However, amendments to the statute enacted in 2006 provide that no civil action may be commenced by a state or local government against an Indian tribe or an Indian in Indian country for violations of the CCTA.  Id. § 2346(b).

### 1.    Requirements of New York Tax Law § 471

Defendants claim that the City's CCTA claim must be dismissed for failure to state a claim because the State of New York has adopted a forbearance policy on enforcing tax laws in sales to Native American cigarette retailers.  As discussed above, the CCTA prohibits the sale and transport of unstamped, "contraband" cigarettes only if taxes are "required" by state law. Defendants contend that, as a result of the Department's forbearance policy, articulated in its

Advisory Opinion of March 16, 2006, the tax set forth in New York Tax Law § 471(1)-(2) does not apply to cigarette sales by defendant wholesalers to reservation retailers. These cigarettes, therefore, are not "required" to be stamped within the meaning of 18 U.S.C. § 2341, and are not contraband within the meaning of 18 U.S.C. § 2342. Without this state law requirement, defendants argue, no violation of the CCTA can occur.

The Court finds defendants' arguments unpersuasive. The City's claim under the CCTA may be maintained because N.Y. Tax Law § 471(1)-(2) constitutes an "applicable" tax for the purposes of 18 U.S.C. § 2341. The Second Circuit has noted that a court's "starting point in statutory interpretation is the statute's plain meaning, if it has one." United States v. Dauray, 215 F.3d 257, 260 (2d Cir. 2000). The clear language of § 471(1) imposes a "tax on all cigarettes possessed in the state" except those cigarettes the state lacks the power to tax. Section 471(2) goes on to require that stamping agents "purchase stamps and affix such stamps in the matter prescribed to packages of cigarettes to be sold within the state." The plain, mandatory phrasing of the statute sets forth a requirement that stamping agents affix tax stamps to all cigarettes the state has the power to tax, which includes those sold by reservation retailers for re-sale to the public. See Dep't of Taxation & Fin. of N.Y. v. Milhelm Attea & Bros., Inc., 512 U.S. at 61. In reaching this conclusion, the Court follows "[t]he preeminent canon of statutory interpretation" which requires a court to "presume that the legislature says in a statute what it means and means in a statute what it says there." BedRoc Ltd., LLC v. United States, 541 U.S. 176, 183 (2004) (citation omitted).

New York Tax Law § 471, then, constitutes an "applicable" state tax for the purposes of the CCTA. Contraband cigarettes are defined in the CCTA as those that bear no evidence of

payment of an "applicable" tax where the state requires such evidence. 18 U.S.C. § 2341. As courts have repeatedly held, the term "applicable" means "capable of being applied." See City of New York v. Beretta U.S.A. Corp., 401 F. Supp. 2d 244, 261 (E.D.N.Y. 2005); Snyder v. Buck, 75 F. Supp. 902, 907 (D.D.C. 1948). Section 471 is capable of being applied to the transactions at issue in this case. Whether the Department chooses to enforce it in a particular instance does not nullify the statute's requirements.

The Court recognizes that the Department has publicly articulated a forbearance policy on the collection of taxes from the sale of cigarettes by stamping agents to reservation retailers, and that a New York State court has upheld the rationality of that policy. See In re of New York Assoc. of Convenience Stores v. Urbach, 275 A.D.2d 520, 522, 712 N.Y.S.2d 222, 224 (N.Y. App. Div. 2000). However, an enforcement decision by the Department does not serve to obviate state legislation. The New York Attorney General, through its representative, has advised this Court that N.Y. Tax Law § 471 presently requires stamps be placed on cigarettes sold by stamping agents to reservation retailers, and remains "in full effect." (Oct. 30, 2007 Tr. at 5.) The Attorney General also stated to the Court that "[t]his administration has no forbearance policy." (Id. at 6.) In view of the plain language of the statute as well as representations by the Attorney General to this Court that New York Tax Law § 471 remains in effect, the Court declines to dismiss the City's CCTA claim.

Additionally, advisory opinions are issued by the Department at the request of an individual or entity. See New York State Department of Taxation and Finance, "Advisory Opinions," http://www.tax.state.ny.us/ pubs_and_bulls/advisory_opinions. The Court rejects defendants' argument that this kind of statement on enforcement, issued by a state agency and of

21

limited applicability, nullifies the requirements of a statute passed by a state's legislature and signed by its governor. See, e.g., LensCrafters, Inc. v. Wadley, 248 F. Supp. 2d 705, 737 (M.D. Tenn. 2003) ("The court can see no basis for finding that the avowed benefits of a statute duly enacted by the legislature may be undermined by poor enforcement on the part of the executive branch. If such were the case, the executive branch would be in a position to invalidate any law with which it disagreed.") aff'd 403 F.3d 798 (6th Cir. 2005).

Other federal courts have concluded that claims under the CCTA alleging violations of N.Y. Tax Law may be maintained. In United States v. Morrison, 521 F. Supp. 2d 246 (E.D.N.Y. 2007), the court denied a motion to dismiss criminal charges under the CCTA brought against a reservation retailer for sales of unstamped cigarettes. In doing so, it addressed the defendant's argument relying on the Department's forbearance policy, stating:

> Defendant's interpretation is strained because it relies solely on the executive branch's enforcement policies rather than the applicable State laws, which clearly provide that Morrison's sale of cigarettes to non-native Americans on the reservation is a taxable event. Defendant's interpretation essentially nullifies the requirements of state law as that term is commonly understood and reads the legislature right out of the picture. Simply stated, states "require" certain conduct via duly enacted laws; the failure of the executive branch to enforce the law is not the same as saying that the legislative branch has repealed it.

Morrison, 521 F. Supp. 2d at 254. The court rejected the defendant's contention that the Department's forbearance policy vitiated statutory liability, and that he did not have fair notice of the violation. Id. at 254-55.

Similarly, in United States v. Kaid, the government sought prosecution under the CCTA of a group of individuals, including non-Native Americans who purchased large quantities of cigarettes and one stamping agent, for CCTA violations. 241 Fed. Appx. 747 (2d Cir. 2007). In a summary order addressing the magistrate judge's decision below, the Second Circuit

considered a defense raised by some defendants that the Department's forbearance policy "effectively 'de-taxed' sales of cigarettes to non-Native Americans on reservation land, thereby negating the element of 'contraband' necessary to a conviction for trafficking in contraband cigarettes under [the CCTA] 18 U.S.C. §§ 2341-2." Id. at 750. The Second Circuit noted:

> While it appears that New York does not enforce its taxes on small quantities of cigarettes purchased on reservations for personal use by non-Native Americans, nothing in the records supports the conclusion that the state does not demand that taxes be paid when, as in this case, massive quantities of cigarettes were purchased on reservations by non-Native Americans for re-sale.

Id. Although the facts of the instant case differ from those presented to the Kaid court, and rulings by summary order do not have precedential effect, the Second Circuit's analysis is relevant insofar as it supports a conclusion that the Department's policy does not completely foreclose liability under the CCTA for violations of New York Tax Law § 471.

Accordingly, the Court finds that the Department's forbearance policy does not bar liability under 18 U.S.C. § 2341 et seq. The City has sufficiently pled that the unstamped cigarettes sold by defendant wholesalers to reservation retailers are "contraband," in violation of the CCTA, because of the requirements set forth in N.Y. Tax Law § 471.

## 2. Other CCTA Arguments

Defendants also contend that the City, through this suit, is attempting to impermissibly regulate transactions that take place on Native American reservations. As discussed above, the Supreme Court has already concluded that a state may tax sales by reservation retailers to the public without unduly infringing on the sovereign rights of Native Americans on their reservation land. See Milhelm Attea & Bros., Inc., 512 U.S. at 64 ("On-reservation cigarette

sales to persons other than reservation Indians, however, are legitimately subject to state taxation."). Accordingly, this argument fails.

The Court declines to dismiss the City's claim against defendants under the CCTA.[3]

**D.    CMSA Claim**

Defendants also move to dismiss the City's claim under New York's Cigarette Marketing Standards Act, New York Tax Law § 484(a)(1). That statute makes it unlawful for:

> [A]ny agent, wholesale dealer or retail dealer, with intent to injure competitors or destroy or substantially lessen competition, or with intent to avoid the collection or paying over of such taxes as may be required by law, to advertise, offer to sell, or sell cigarettes at less than cost of such agent wholesale dealer or retail dealer, as the case may be.

N.Y. Tax L. § 484(a)(1). The statute defines the "cost of such agent" as the "basic cost of cigarettes" plus general costs of doing business borne by the agent. N.Y. Tax L. § 483(b)(1)(A). In turn, the "basic cost of cigarettes" is defined as the invoice cost of cigarettes to the agent . . . to which shall be added the full face value of any stamps which may be required by law." Id. § 483(a)(1). The City contends that defendants violate the CMSA by selling cigarettes to retailers at prices that do not include the cost of tax stamps required by law. In response, defendants essentially put forth the same arguments against the City's CSMA claim as they advanced against its CCTA claim: that defendants are not "required by law" to stamp cigarettes sold to reservation retailers in view of the Department's forbearance policy.

---

[3]    This Memorandum does not reach defendants' contention that plaintiff's additional claim for aiding and abetting violations of the CCTA should be dismissed. The Court finds that this issue has not been adequately briefed by the parties in this case. Defendants may petition the Court to submit additional briefing on whether plaintiff's amended complaint fails to plead a claim for aiding and abetting a CCTA violation.

As discussed above in addressing the City's CCTA claim, N.Y. Tax Law § 471 requires that tax stamps be affixed to cigarettes sold to reservation retailers for re-sale to the public. Thus, the "basic costs of cigarettes" and the "cost of such agent," for the purposes of § 483, include the costs of tax stamps required by § 471. The City has alleged that defendant wholesalers sell cigarettes to reservation retailers for re-sale to the public at prices that do not include the cost of tax stamps required by § 471. The City has set forth sufficient allegations to support its claim under the CMSA. Any questions regarding the defendants' intent to avoid tax collection or lessen competition are factual disputes not properly addressed in the context of this motion. Accordingly, the defendants' motions to dismiss the City's CMSA claim are denied.

### E.    Public Nuisance Claim

The City also brings a public nuisance claim against defendants, alleging that their supply of unstamped cigarettes to reservation retailers for re-sale endangers the health of City residents. (See Am Compl. ¶¶ 38-40, 62-63.)   The City alleges that large quantities of "bootlegged" cigarettes provided by defendants are re-sold through street sellers as well as over the Internet, by telephone, and by mail.  (Id.)  In arguing that defendants' provision of unstamped cigarettes for re-sale to the public constitutes a nuisance, the City relies on the language of N.Y. Public Health Law § 1399-ll, which prohibits remote cigarette sales.  The City also alleges that sellers of unstamped cigarettes are "major suppliers" to underage smokers, and that these sellers fail to comply with N.Y. Public Health Law § 1399-cc(3),which requires proof of age to ensure that cigarettes are only purchased by individuals at least eighteen years old.  (Id. ¶ 6.)

Defendants argue that the City has failed to allege facts to support its nuisance claim and seeks to use the pretext of public health to address a tax issue.  In opposing the City's claim,

defendants rely primarily on <u>City of New York v. A.E. Sales LLC, et al.</u>, No. 03 Civ. 7715, 2005 WL 3782442 (S.D.N.Y. Feb. 9, 2005). In that case, the court dismissed a public nuisance claim brought by the City against cigarette sellers transacting with New York City residents through the Internet. The <u>A.E. Sales</u> court found that the City had failed to plead that defendants' activities were affecting a "considerable number of people," so as to satisfy the elements of a public nuisance claim at common law, where the City alleged that Internet sales accounted for 5.9 percent of industry volume in a given year. <u>Id.</u> at *2.

In New York, public nuisance is defined as "conduct or omissions which offend, interfere with or cause damage to the public in the exercise of rights common to all, in a matter such as to offend public morals, interfere with use by the public of a public place or endanger or injure the property, health, safety or comfort of a considerable number of persons." <u>Copart Indus. Inc., v. Consolidated Edison Co. of New York, Inc.</u>, 41 N.Y.2d 564, 568, 394 N.Y.S.2d 169, 172 (N.Y. 1977) (citing <u>New York Trap Rock Corp. v. Town of Clarkston</u>, 299 N.Y. 77, 80, 85 N.E.2d 873, 875 (N.Y. 1949)). "To be reckoned as 'considerable,' the number of persons affected need not be shown to be 'very great.' [It is] [e]nough that so many are touched by the offense and in ways so indiscriminate and general that the multiplied annoyance may not unreasonably be classified as a wrong to the community." <u>People v. Rubenfeld</u>, 254 N.Y. 245, 247, 172 N.E. 485 (1930) (internal citation omitted); <u>see also Town of Mount Pleasant v. Van Tassell</u>, 7 Misc.2d 643, 166 N.Y.S.2d 458, 462 (N.Y.Sup.Ct.1957) (describing a public nuisance as one that "causes substantial annoyance and discomfort indiscriminately to many and diverse persons who are continually or may from time to time be in the vicinity"). Whether conduct "constitutes a public

nuisance must be determined as a question of fact under all the circumstances." <u>New York Trap Rock Corp.,</u> 85 N.E.2d at 875.

The New York Court of Appeals has determined that a municipal corporation may "bring an action to restrain a public nuisance which allegedly has injured the health of its citizens." <u>New York Trap Rock Corp.,</u> 299 N.Y. at 84 ("[I]t is clear that a public nuisance which injures the health of the citizens of a municipality imperils the very existence of that municipality as a governmental unit."). <u>See also</u> <u>City of New York v. Berretta U.S.A. Corp.,</u> 315 F. Supp. 2d 256, 276-77(E.D.N.Y. 2004) ("[T]he City [of New York] is a proper party to bring an action to restrain a public nuisance that allegedly may be injurious to the health and safety of its citizens.") (quoting <u>New York State Nat'l Org. for Women v. Terry,</u> 886 F.2d 1339, 1361 (2d Cir.1989)).

The City cites to N.Y. Public Health Law §§ 1399-ll and 1399-cc to support its claim that defendants' sale of unstamped cigarettes for subsequent re-sale is a public nuisance. These provisions address the unlawful shipment and transport of cigarettes. Section One of the statute prohibits cigarette vendors from shipping cigarettes to anyone in New York State who is not a person licensed as a cigarette tax agent or wholesale dealer; an export warehouse proprietor; or a person who is an officer, employee or agent of the government, acting in his or her official capacity. Section Two prohibits a carrier from knowingly transporting cigarettes to any person in the state, other than those listed in Section One, with narrow exceptions. New York Public Health Law § 1399-ll does not provide the City with standing to enforce its provisions in a criminal or civil capacity. Additionally, N.Y. Public Health Law § 1399-cc states that the sale of cigarettes can only be made to individuals over eighteen years of age who demonstrate photographic identification issued by a government entity.

The Court finds that the City has adequately pled that the health of its residents may be endangered by the re-sale of cigarettes over the Internet, by mail, or by telephone.  The language and legislative history of N.Y. Public Health Law §§ 1399-ll and 1399-cc supports a finding of a public nuisance claim for remote sales of cigarettes to New York City residents and underage smokers.  The New York State legislature has explicitly found that "shipments of cigarettes sold via the Internet or by telephone or by mail order to residents of this state poses a serious threat to public health, safety, and welfare to the funding of health care and to the economy of the state." N.Y. Pub. Health L. § 1399-ll (L.200, ch. 262 § 1).  As public nuisance in New York is defined as "conduct or omissions which . . . endanger or injure the property, health, safety, or comfort of a considerable number of persons," Copart Indus., Inc., 41 N.Y.2d at 568, the City may sustain a public nuisance claim based on allegations of illegal, remote sales to New York City residents that endanger their health.  New York Trap Rock Corp., 299 N.Y. at 83; see also A.E. Sales, at *6 ("Thus, by the language of the legislative findings, Plaintiff has adequately pled that the health of people may be endangered by the act of selling cigarettes over the Internet."); see also Berretta, 271 F. Supp. 2d at 482 ("A wide variety of specific types of danger and injury to the public have been recognized in New York as public nuisances.").

The City also has sufficiently alleged that a "considerable number of people" are endangered by these remote sales.  To support its claim, the City states that "perhaps as much as 15 percent of all smokers purchase their cigarettes from Internet sellers, street sellers and reservation sellers."  (Id. ¶¶ 43-46.)  The City links these smokers to the defendants by alleging that the majority of online cigarette merchants selling unstamped cigarettes are located on Native American reservations.  (Id. ¶ 40.)  Additionally, the City asserts that a major part of the

28

defendants' business is the sale of unstamped cigarettes for re-sale to the public; 80 percent of the wholesale business of at least one defendant consists exclusively of sales to Native American retailers. (Am. Compl. ¶ 38.)

Although the City may ultimately be un able to establish these elements, its allegations are adequate to sustain its claim for the purposes of a motion pursuant to Rule 12(b)(6). See Goldstein v. Pataki. 516 F.3d at 56 (holding that "at a bare minimum, the operative standard requires the plaintiff [to] provide the grounds upon which his claim rests through factual allegations sufficient to raise a right to relief above the speculative level") (internal quotation marks omitted); see Erickson v. Pardus 127 S.Ct. at 2200.

New York case law also suggests that an inquiry into causation may be appropriate when the alleged connection between the actions of the defendant and the resulting harm may be too attenuated to support a finding of liability. See People ex rel. Spitzer v. Sturm, Ruger & Co., Inc., 309 A.D.2d 91, 95, 761 N.Y.S.2d 192, 196 (N.Y. App. Div. 2003) (liability for an alleged public nuisance may be denied where the causal connection between the alleged business conduct and harm is too tenuous and remote) (citing Hamilton v. Beretta U.S.A. Corp., 96 N.Y.2d 222, 727 N.Y.S. 2d 7 (N.Y. 2001)); see also City of New York v. A-1 Jewelry & Pawn, Inc., 247 F.R.D. 296, 346-47 (E.D.N.Y. 2007) (discussing factual and proximate causation in a suit alleging public and statutory nuisance against out-of-state firearms retailers whose practices allegedly lead to the diversion of large numbers of guns into the secondary, illegal firearms market. Factual causation requires "proof that a defendant, alone or with others, created, contributed to, or maintained the alleged interference with the public right." See, e.g., City of New York v. A-1 Jewelry & Pawn, Inc., 247 F.R.D. at 346-47; Hine v. Aird-Don Co., 232 A.D.

359, 250 N.Y.S. 75, 77 (N.Y. App. Div. 1931); McNulty v. Ludwig & Co., 153 A.D. 206, 138

N.Y.S. 84, 91 (N.Y. App. Div. 1912); Sullivan v. McManus, 19 A.D. 167, 45 N.Y.S. 1079, 1080

(N.Y. App. Div 1897). Similarly, proximate causation demands a reasonable connection

between defendants' alleged actions and the harm that followed. People v. Strurm, Ruger & Co.,

Inc., 309 A.D.2d 91, 104; see also City of New York v. A-1 Jewelry & Pawn, Inc., 247 F.R.D. at

346-47 ("Proximate causation embodies a policy requirement in some tort actions that a

defendant's tortuous conduct be so causally sufficiently close to the harm suffered that it is just

or fair to hold the defendant liable for the consequences of its actions."). When more than one

party is alleged to have participated or created a public nuisance, joint and several liability for

the resultant injury may be appropriate. City of New York v. A-1 Jewelry & Pawn, Inc., 247

F.R.D. at 347 (citing State v. Schenectady Chems. Inc., 103 A.D.2d 33, 479 N.Y.S.2d 1010,

1014 (N.Y. App. Div. 1984)).

     As an initial matter, defendants do not appear to challenge the City's allegations of

factual causation and make only a passing argument regarding proximate causation, relying

instead on contentions that state issues of public policy preclude the City's nuisance claim, and

that the City has failed to allege a "considerable number of people" were injured by the

defendants' activity. See Def. Joint Mem. at 24-26; Day Wholesale Mem. at 50-53. To the

extent that defendants do challenge causation, the Court finds that the City's allegations are

sufficient to support a finding that defendants' conduct factually and proximately caused the

City's injury. (See Am. Compl. ¶¶ 38-47; 60-65.) See also City of New York v. A-1 Jewelry &

Pawn, Inc., 247 F.R.D. at 347 ("Whether specific acts or omissions meet this standard involves a

fact-intensive inquiry, making it difficult to resolve the issue on a motion to dismiss on the

pleadings."); <u>Derdiarian v. Felix Contracting Corp.</u>, 51 N.Y.2d 308, 434 N.Y.S.2d 166 (N.Y.1980) (noting in context of negligence action that issues of causation are generally for the fact finder to resolve). Accordingly, the defendants' motion to dismiss the City's public nuisance claim is denied.

## III.     Necessary and Indispensable Parties

### A.     Standard of Review

Defendants have also moved to dismiss the City's complaint pursuant to Fed. R. Civ. P. 12(b)(7). Before dismissing a complaint under Rule 12(b)(7), a district court must determine whether a missing party is necessary within the meaning of Fed. R. Civ. P. 19. <u>Johnson v. Smithsonian Inst.</u>, 189 F.3d 180, 188 (2d Cir. 1999).

### B.     Defendants' Rule 19 Arguments

Defendants contend that this case should not proceed in the absence of "affected Indian nations" or New York State. The rights of Native Americans are implicated, according to defendants, because the City seeks to classify unstamped cigarettes shipped to reservations as contraband. Additionally, defendants argue New York State is necessary to this proceeding because "re-classification of unstamped cigarettes" implicates State policy.

Pursuant to Fed. R. Civ. P. 19, a court must conduct a two-step inquiry to determine whether an action must be dismissed for failure to join a necessary and indispensable party. <u>See</u> Fed. R. Civ. P. 12(b)(7); <u>Assoc. Dry Goods Corp. v. Towers Fin. Corp.</u>, 920 F.2d 1121, 1123-24 (2d Cir. 1990). First, the court must focus on whether the presence of the party to the action is necessary. Specifically, Rule 19(a)(1) provides, in relevant part:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if: (A) in that person's absence the

court cannot accord complete relief among existing parties, or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect the interest or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a).

If a party is necessary, but joinder would divest the court of jurisdiction, the court must consider whether dismissal is warranted under Rule 19(b), that is, whether the suit can proceed "in equity and good conscience" without the necessary party. See Fed. R. Civ. P. 19(b); Assoc. Dry Goods, 920 F.2d at 1124. In determining whether a party is indispensable, a court should consider: (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties, (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided, (3) whether a judgment rendered in the person's absence will be adequate, and (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder. Fed. R. Civ. P. 19(b); see Seneca Nation of Indians v. New York, 383 F.3d 45, 48 (2d Cir. 2004). The party moving for dismissal for failure to join an indispensable party "has the burden of producing evidence showing the nature of the interest possessed by an absent party and that the protection of that interest will be impaired by the absence." Holland v. Fahnestock & Co., Inc., 210 F.R.D. 487, 494 (S.D.N.Y.2002) (quoting Citizen Band Potawatomi Indian Tribe v. Collier, 17 F.3d 1292, 1293 (10th Cir.1994)).

### 1. Native American Tribes as Necessary Parties

Native American tribes in New York State are not necessary parties to this lawsuit. First, because their absence will not deny complete relief to the parties, Native American tribes are not

required to be joined under Rule 19(a)(1)(A). If defendant wholesalers were to affix tax stamps to cigarettes they sell to Native American retailers for re-sale to the public, and remit the applicable State taxes, the City will have secured its requested relief. Although defendants question whether such a remittance scheme may be practically executed given the history of Native American taxation in New York State, that dispute is not properly resolvable in the motion to dismiss context.

Second, because no Native American tribe has claimed "an interest relating to the subject of the action," they are not required to be joined under either prong of Rule 19(a)(2). See, e.g., Conntech Dev. Co. v. Univ. of Connecticut Educ. Props., Inc., 102 F.3d 677, 682 (2d Cir. 1996). Even if a Native American tribe claimed an interest, that interest would not be impeded by a disposition in this case. A judgment in the City's favor would not negate established tribal rights because Native American tribes do not have established rights in the sale of unstamped cigarettes by reservation retailers to the public. See Milhelm Attea & Bros., Inc., 512 U.S. at 64 ("On-reservation cigarette sales to persons other than reservation Indians, however, are legitimately subject to state taxation."); Washington v. Confederated Tribes of Colville Reservation, 447 U.S. at 159 ("[T]he State may validly require the tribal smokeshops to affix tax stamps purchased from the State to individual packages of cigarettes prior to the time of sale to nonmembers of the Tribe."). To the extent, that a tribe's sovereignty is implicated by a decision involving the tax status of goods sold by reservation retailers, the burden in this context is minimal. See Moe v. Confederated Salish and Kootenai Tribes of Flathead Reservation, 425 U.S. at 483; Washington, 447 U.S. at 156-60. Any impact on Native American rights is further attenuated by the fact that this case is brought against wholesalers who sell to reservation retailers, rather than the

reservation retailers themselves.  See, e.g., Citizens Against Casino Gambling in Erie County v. Kempthorne, 471 F.Supp.2d 295, 315 (W.D.N.Y. 2007) (Native American tribe was not a necessary party to lawsuit even though it may have some "interest relating to the subject matter of th[e] action" because a party is not necessary "unless that interest will, as a practical matter, be impaired or impeded by this suit.").

As the Court has found that Native American nations in New York State are not necessary parties, it declines to consider whether they are indispensable under Rule 19(b).  See Viacom Int'l, Inc. v. Kearney, 212 F.3d 721, 724 (2d Cir. 2000) ("If a party does not qualify as necessary under Rule 19(a), then the court need not decide whether its absence warrants dismissal under  Rule 19(b).").

### 2. New York State as a Necessary Party

Similarly, New York State is not a necessary party to this lawsuit.  The State's absence will not deny complete relief to the parties.  As discussed above, the City will secure the relief it seeks by defendants' stamping of cigarettes sold by reservation retailers for re-sale to the public. The Court recognizes that the State's involvement may be preferred by the defendants to execute any remedy secured by the City in this litigation.  However, based on the arguments presented by both parties, the Court cannot conclude that complete relief requires the State's participation in this suit.  For example, defendant wholesalers, based on their market knowledge, could allocate a certain percentage of their sales to reservation retailers as non-taxed and affix tax stamps to the remaining units sold in anticipation of re-sale to members of the public.  Such a program, while not without its challenges, could afford the parties complete relief without the State's participation.  Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 49 (2d Cir. 1996) (finding that

"'complete relief' can be accorded even without the [the government], because nothing in the district court's statements or final judgment requires the [the government] to do anything or change any of its positions").  The defendants, moreover, may compensate the City for lost revenue resulting from its alleged unlawful activity without involving the State.

The State, moreover has not claimed any interest in this lawsuit pursuant to Rule 19(a)(1)(B) even though, as the Court recognized in its Order dated August 24, 2007, this lawsuit implicates the collection of tax revenue by the State of New York.  The Attorney General for the State of New York was made aware of the issues raised in this case by the Court's August 24, 2007 Order and has declined to claim an interest, as <u>amicus curiae</u> or otherwise.  (<u>See</u> Oct. 30, 2007 Tr. at 3 (State Attorney General's office represents to the Court that the State of New York has no intention of filing briefs in connection with the instant case.)  <u>See</u> <u>Conntech Dev. Co.</u>, 102 F.3d at 683 (finding that a state was not a necessary party in part because "the record reflects that the Government has meticulously observed a neutral and disinterested posture") (citation omitted).  In view of the facts that New York State has explicitly declined to exercise any interest it has in relation to this pending litigation, and complete relief may be afforded among the present parties, the Court declines to find the State necessary to the instant case.

Even if this Court were to conclude that the State was necessary because complete relief could not be afforded among the existing parties, the State is not indispensable to this lawsuit.  The Second Circuit has observed that courts should take a "flexible approach" under Rule 19(b) when deciding whether parties are indispensable, and that "very few cases should be terminated . . . unless there has been a reasoned determination that their nonjoinder makes just resolution of

the action impossible." Jaser v. N.Y. Prop. Ins. Underwriting Ass'n, 815 F.2d 240, 242 (2d Cir.1987) (citations omitted).

In this case, the Court finds that the City's suit can proceed without the State "in equity and good conscience." Relief may be designed to lessen any prejudice to the State, as discussed above, and adequate judgment may be rendered in the State's absence. The City, moreover, will have no adequate remedy if the action is dismissed, which counsels against a finding of indispensability. Fed. R. Civ. P. 19(b). The Court concludes, therefore, that defendants have not carried their burden of demonstrating that the State is indispensable to this suit.

<u>CONCLUSION</u>

For the foregoing reasons, the Court denies defendants' motions to dismiss this lawsuit made pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6), and 12(b)(7).

SO ORDERED.

Date:   April 30, 2008
          Brooklyn, NY

Carol Bagley Amon
United States District Judge