UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
THE CITY OF NEW YORK,

               Plaintiff,                              **MEMORANDUM & ORDER**

-against-                                                   06-CV-3620 (CBA)

MILHELM ATTEA & BROS., INC.,
DAY WHOLESALE, INC.,
GUTLOVE & SHIRVINT, INC.,
MAURO PENNISI, INC.,
JACOB KERN & SONS, INC.,
WINDWARD TOBACCO, INC., and
CAPITAL CANDY COMPANY, INC.,

               Defendants.
----------------------------------------------------------x
AMON, United States District Judge.

      The City of New York filed this action against the above-captioned defendants, a group of cigarette wholesalers who are state-licensed cigarette stamping agents. The City's principal contention is that the wholesalers violate the Contraband Cigarette Trafficking Act ("CCTA"), 18 U.S.C. § 2341 et seq., by shipping in excess of 10,000 unstamped cigarettes to reservation retailers who re-sell the cigarettes to the public. According to the City, New York Tax Law § 471 requires that cigarettes sold to Native Americans for re-sale to the broader public must be taxed. The City argues that defendants are responsible for collecting the tax by purchasing tax stamps from the New York State Tax Commission and affixing them to cigarette packages.

      On April 30, 2008, this Court denied defendants' motion to dismiss the City's Amended Complaint. The Court found that the City can maintain its claim under the CCTA because New York Tax Law § 471 constitutes an "applicable" tax for the purposes of 18 U.S.C. § 2341. See City of New York v. Milhelm Attea & Bros., Inc. ("Milhelm I"), 550 F. Supp. 2d 332, 346-47 (E.D.N.Y. 2008). On December 23, 2008, the Court denied defendants' motion to reconsider

that ruling. See City of New York v. Milhelm Attea & Bros., Inc., 591 F. Supp. 2d 234, 236 (E.D.N.Y. 2008). Presently before the Court is defendants' motion for leave to file an immediate appeal from this Court's ruling pursuant to 28 U.S.C. § 1292(b). The parties also have provided the Court with supplemental briefing on the legal basis for dismissing the City's aiding and abetting claims under 18 U.S.C. § 2341. The Court assumes the parties' familiarity with the facts and issues of this case as detailed in Milhelm I.

For the following reasons, the City's aiding and abetting claims are dismissed and defendants' motion for leave to file an immediate appeal from this Court's April 30, 2008 ruling is denied.

## I. Aiding and Abetting Liability Under the CCTA

### A. The City's Allegations

The CCTA makes it "unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute or purchase contraband cigarettes." 18 U.S.C. § 2342(a). Contraband cigarettes are defined as "a quantity in excess of 10,000 cigarettes, which bear no evidence of the payment of applicable State or local cigarette taxes in the State or locality where such cigarettes are found, if the State or local government requires a stamp, impression, or other indication to be placed on packages or other containers of cigarettes to evidence payment of cigarette taxes." Id. § 2341(2). "A violation of a state or local cigarette tax law, therefore, is a predicate to a CCTA violation; the state or local government must 'require' a stamp to be placed on cigarette packages as evidence of payment of an applicable tax." Milhelm I, 550 F. Supp. 2d at 346.

The City alleges that CCTA violations occur at two different points in the supply chain. First, wholesalers such as defendants violate the CCTA by selling cigarettes to Native American retailers, knowing they are destined for re-sale to the public, without pre-paying applicable

cigarette taxes.  Second, Native American retailers[1] themselves violate the CCTA when they re-sell those cigarettes in sufficiently large quantities to non-tribal purchasers.  The City seeks to hold defendants responsible for both violations, the former under a theory of primary liability, and the latter under a theory of "aiding and abetting" liability.

Thus, the City alleges that defendants are subject to primary liability under the CCTA because "each defendant has shipped, transported, sold, and distributed [contraband cigarettes] under circumstances in which the State requires that they bear stamps."  (Am. Compl. ¶ 49.) Specifically, New York Tax Law § 471(1) imposes a "tax on all cigarettes possessed in the state" except those cigarettes the state lacks power to tax, and § 471(2) requires defendants, as stamping agents, to "purchase stamps and affix such stamps in the manner prescribed to packages of cigarettes to be sold within the state."  The Court allowed this claim to go forward in Milhelm I, holding that New York Tax Law § 471(1)-(2) constitutes an "applicable" tax for the purposes of the CCTA.  550 F. Supp. 2d at 346.

The City also alleges that defendants violate the CCTA "by knowingly aiding and abetting repeated violations of the CCTA by cigarette sellers operating on Native American reservations, some or all of whom have shipped, transported, sold, and distributed 'contraband cigarettes' in the State."  (Am. Compl. ¶ 50; see also id. ¶ 35 ("Defendants' sale, transport, distribution and shipment of unstamped cigarettes to Native Americans under the above circumstances aids and abets violations of the CCTA by such Native Americans.")).  In Milhelm I, the Court declined to reach defendants' contention that this aiding and abetting claim should be dismissed, finding that the issue had not been adequately briefed.  550 F. Supp. 2d at 348 n.3.

---

[1] Defendants in this action are cigarette wholesalers and stamping agents only.  The City has filed a related action in this Court against a group of Native American smoke shops.  See City of New York v. Golden Feather Smoke Shop, Inc., No. 08 Civ. 3966 (CBA).

Having considered the parties' additional briefing on this issue, the Court concludes that the CCTA does not provide for civil aiding and abetting liability. Accordingly, defendants' motion to dismiss the City's aiding and abetting claims pursuant to Federal Rule of Civil Procedure 12(b)(6) is granted.

B. **Discussion**

Aiding and abetting is a basic principle of criminal law. "Under 18 U.S.C. § 2(a), anyone who aids or abets the commission of an offense against the United States is punishable as a principal." United States v. Huezo, 546 F.3d 174, 179 (2d Cir. 2008). By contrast, "Congress has not enacted a general civil aiding and abetting statute—either for suits by the Government (when the Government sues for civil penalties or injunctive relief) or for suits by private parties." Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 182, 114 S.Ct. 1439, 1450 (1994). Noting this distinction, the Supreme Court has instructed that "when Congress enacts a statute under which a person may sue and recover damages from a private defendant for the defendant's violation of some statutory norm, there is no general presumption that the plaintiff may also sue aiders and abettors." Id. at 182, 114 S.Ct. at 1450-51.

In Central Bank, the Supreme Court held that private civil liability under § 10(b) of the Securities Exchange Act of 1934 does not extend to parties who only aid and abet another's violation. Id. at 177. Finding that "the statutory text controls the definition of conduct covered by § 10(b)," the Supreme Court declined to infer a cause of action for aiding and abetting liability that was not expressly created by statute. Id. at 176-77. Following Central Bank, courts have refused to create a civil cause of action for aiding and abetting that has no basis in the statutory text. See, e.g., Freeman v. DirecTV, Inc., 457 F.3d 1001, 1006 (9th Cir. 2006) (concluding that courts should not infer the existence of aiding and abetting liability where "the

statutory sections are clear about upon whom they are imposing liability and there are no unreasonable or impracticable results"); Doe v. GTE Corp., 347 F.3d 655, 658-59 (7th Cir. 2003); see also Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin, 135 F.3d 837, 838 (2d Cir. 1998) (holding that reasoning of Central Bank precludes civil cause of action for conspiracy under § 10(b)).

In addressing the existence of civil aiding and abetting liability under the CCTA, therefore, the Court begins with the statutory text. The CCTA provides: "It shall be unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes or contraband smokeless tobacco." 18 U.S.C. § 2342(a). The Attorney General of the United States is authorized to enforce this prohibition. See id. § 2346(a). In addition, Section 2346(b) authorizes state and local governments to sue violators of the CCTA. It provides: "A State, through its attorney general, [or] a local government, through its chief law enforcement officer (or a designee thereof) . . . may bring an action in the United States district courts to prevent and restrain violations of this chapter by any person (or by any person controlling such person) . . . ." Id. § 2346(b)(1).

As an initial matter, the Court notes that these statutory provisions do not contain the words "aid" and "abet" or any other express language authorizing civil suits against secondary violators of the CCTA, other than control persons.[2] This fact alone counsels against construing the CCTA to include civil aiding and abetting liability. See Central Bank, 511 U.S. at 176-77, 114 S.Ct. at 1448 ("Congress knew how to impose aiding and abetting liability when it chose to do so. If . . . Congress intended to impose aiding and abetting liability, we presume it would have used the words 'aid' and 'abet' in the statutory text. But it did not." (internal citations

---

[2] The City does not contend that any defendant is a "person controlling" a Native American smoke shop that sells contraband cigarettes, as that term is used in the CCTA.

omitted)); GTE Corp., 347 F.3d at 658-59 ("Normally federal courts refrain from creating secondary liability that is not specified by statute.").

Following Central Bank, however, courts have not always required express statutory language before holding a defendant civilly liable for aiding and abetting. When the text of a particular statute is ambiguous, courts have found aiding and abetting liability to exist based upon broad statutory language. See Boim v. Quranic Literacy Instit. & Holy Land Found. for Relief & Dev., 291 F.3d 1000, 1020-21 (7th Cir. 2002) ("That Congress did not use the words 'aid and abet' in the statute is not determinative when it did use words broad enough to include all kinds of secondary liability."); Linde v. Arab Bank, PLC, 384 F. Supp. 2d 571, 583 (E.D.N.Y. 2005); Wiwa v. Royal Dutch Petroleum Co., No. 96 Civ. 8386, 2002 WL 319887, at *15 (E.D.N.Y. Feb. 28, 2002). In Boim, the Seventh Circuit approved a private cause of action for aiding and abetting under 18 U.S.C. § 2333, which creates civil liability for activities that "involve" international terrorism. 291 F.3d at 1016-21. The court reasoned that "involve" is a broad word, and that by using it Congress intended for the statute "to reach beyond those persons who themselves commit the violent act that directly causes the injury." Id. at 1011. Courts within the Second Circuit have reached similar conclusions. See Linde, 384 F. Supp. 2d at 583 (agreeing with Boim's construction of the Anti-Terrorism Act); Wiwa, 2002 WL 319887, at *15 (finding cause of action for aiding and abetting under statute creating liability "for an individual who 'subjects' another to torture or extrajudicial killing" upon conclusion that "subjects" extends to all individuals who "cause someone to undergo" the prohibited acts).

These cases do not deviate from the principle that a civil action for aiding and abetting must be created by statute. Rather, they interpret Central Bank to require either explicit or implicit congressional authorization, with some grounding in the statutory text. See Wiwa 2002

WL 319887, at *16 ("Neither Central Bank nor Dinsmore holds that a statute must explicitly allow for secondary liability in order for a court to hold aiders and abettors or co-conspirators liable. Rather, Central Bank and Dinsmore support the proposition that the scope of liability under a statute should be determined based on a reading of the text of the specific statute."). Where a statute is specific as to who may be liable, courts have found that the express statutory language controls the scope of liability. See Freeman, 457 F.3d at 1004-05 (declining to infer aiding and abetting liability from statute providing for cause of action against persons "engaged" in prohibited activity); GTE Corp., 347 F.3d at 659 (declining to infer aiding and abetting liability for violation of Electronic Communications Privacy Act because "nothing in the statute condemns assistants, as opposed to those who directly perpetrate the act"); Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison, 955 F. Supp. 248, 255-56 (S.D.N.Y. 1997) (concluding that no private civil cause of action for aiding and abetting RICO violation exists because the text says nothing about secondary liability).

The language of the CCTA is unambiguous as to who may be held liable. The CCTA makes it "unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute, or purchase contraband cigarettes or contraband smokeless tobacco." 18 U.S.C. 2342(a). Although the statute prohibits several categories of activity, nothing in this prohibition makes it unlawful to assist in any of those activities. The provision authorizing the City to bring suit is equally unambiguous. It authorizes local governments to "bring an action in the United States district courts to prevent and restrain violations of this chapter by any person (or by any person controlling such person)." 18 U.S.C. § 2346(b)(1). By its terms, Section 2346(b)(1) authorizes the City to sue direct violators and persons "controlling" the direct violators, but does not extend to aiders and abettors. "A statute that is this precise about who, other than the primary [violator],

can be liable, should not be read to create a penumbra of additional but unspecified liability." GTE Corp., 347 F.3d at 659.

The City argues that the CCTA incorporates aiding and abetting liability through 18 U.S.C. § 2, which creates federal aiding and abetting liability for all criminal violations. According to the City, the CCTA fundamentally establishes a criminal violation, and 18 U.S.C. § 2346(b) provides a civil remedy for criminal violations of the CCTA. Therefore, the City contends, there is a civil cause of action for the criminal act of aiding and abetting a CCTA violation.

The court in Department of Economic Development v. Arthur Andersen & Co., 924 F. Supp. 449 (S.D.N.Y. 1996), addressed and rejected the identical argument made in the context of civil liability under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Id. at 476. The plaintiff in that case argued that "Section 1964(c) creates a civil remedy for criminal violations of § 1962," such that, by way of § 2, there is a civil cause of action for "the criminal act of aiding and abetting a violation of § 1962." Id. Like the CCTA, RICO sets forth a criminal violation, but also provides for a civil action against those who violate its provisions. Section 1964(c) provides: "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court . . . ." 18 U.S.C. § 1964(c).

In Arthur Andersen, Judge Mukasey rejected the contention that this statutory scheme created civil aiding and abetting liability. The court reasoned as follows:

> DED misunderstands the relationship of § 2 to the rest of Title 18. Section 2 merely states that those who aid and abet others who commit federal crimes are criminally liable as principals. Section 2 takes effect only in combination with some other provision creating primary criminal liability. Section 2 has no application to § 1964(c), the provision that creates the civil RICO action, because

> a violation of § 1964(c) is not "an offense against the United States" within the meaning of § 2.

924 F. Supp. at 476. Other courts have followed <u>Arthur Andersen</u>, rejecting civil aiding and abetting liability for RICO. <u>See, e.g.</u>, <u>Pa. Ass'n of Edwards Heirs v. Rightenour</u>, 235 F.3d 839, 843-44 (3d Cir. 2000); <u>Ling v. Deutsche Bank, AG</u>, No. 04 Civ. 4566, 2005 WL 1244689, at *3 (S.D.N.Y. May 26, 2005) (citing <u>Arthur Andersen</u>, 924 F. Supp. at 475-77); <u>Hayden</u>, 955 F. Supp. at 256; <u>see also</u> Jed S. Rakoff, <u>Aiding and Abetting Under Civil RICO</u>, N.Y.L.J., May 12, 1994, at 3 ("[T]here is no suggestion that § 2, enacted in 1909, was intended to authorize civil liability for aiding and abetting in any situation in which Congress thereafter combined civil and criminal penalties in one statute, whether in RICO (enacted in 1970), the Securities Exchange Act (enacted in 1934), or elsewhere.").

The Court finds this reasoning persuasive as applied to the CCTA. Although § 2 does not create a separate crime of aiding and abetting a federal offense, it remains a separate and distinct concept from the offense itself. <u>See</u> <u>Virella v. United States</u>, 750 F. Supp. 111, 115 (S.D.N.Y. 1990). Section 2 expands the class of persons who may be punished criminally in connection with an offense against the United States. <u>See</u> 18 U.S.C. § 2 ("Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal."). Thus, for each federal crime, the substantive criminal provision sets forth what the "violation" is. Section 2 then increases the scope of who may be punished criminally for that violation. In doing so, § 2 does not re-define the violation itself. <u>See</u> <u>United States v. Megna</u>, 450 F.2d 511, 512 (5th Cir. 1971) ("18 U.S.C. § 2 does not define a crime. It makes punishable as a principal one who aids or abets the commission of a crime.")

The CCTA makes it a criminal offense "for any person knowingly to ship, transport, receive, possess, sell, distribute or purchase contraband cigarettes." 18 U.S.C. § 2342(a). The individual who traffics in contraband cigarettes in direct violation of this provision is criminally liable. Pursuant to § 2, one who aids and abets the cigarette trafficker is criminally "punishable" for the trafficker's offense. Although a state or local government may bring a civil action against a direct violator pursuant to § 2346(b), there is no statutory provision similar to § 2 authorizing civil suits against aiders and abettors, and § 2 is not referenced in either § 2342(a) or § 2346(b).

The Court recognizes that, from a policy standpoint, state and local governments could enforce the CCTA more effectively if they could pursue aiders and abettors in addition to primary violators. Unlike the private civil actions at issue in Central Bank, enforcement actions by municipal governments may well present circumstances in which the benefit of aiding and abetting liability outweighs the risk of excessive litigation. These policy considerations, however, cannot override the plain meaning of the statutory text. See Central Bank, 511 U.S. at 188, 114 S.Ct. at 1453-54 ("Policy considerations cannot override our interpretation of the text and structure of the Act, except to the extent that they may help to show that adherence to the text and structure would lead to a result 'so bizarre' that Congress could not have intended it."). Whether municipal entities should be permitted to pursue aiders and abettors is for Congress to decide through legislation, not for this Court to determine by a strained interpretation. See Rolo v. City Investing Co. Liquidating Trust, 155 F.3d 644, 657 (3d Cir. 1998) ("[D]espite the existence of cogent policy arguments in support of extending civil liability to aiders and abettors of RICO violations, under Central Bank of Denver, we must interpret and apply the law as Congress has written it, and not [ ] imply private causes of action merely to effectuate the purported purposes of the statute." (internal quotation marks omitted)), abrogation on other

grounds recognized, Forbes v. Eagleson, 228 F.3d 471 (3d Cir. 2000). In Central Bank, the SEC—a non-party to the litigation—asserted that an aiding and abetting cause of action was necessary from a policy standpoint to deter secondary actors from assisting in fraudulent activities and to ensure that defrauded parties were made whole. 511 U.S. at 188, 114 S.Ct. at 1453. This problem was solved, however, not by Surpeme Court interpretation but by an Act of Congress. After Central Bank, Congress passed the Private Securities Litigation Reform Act, which expressly authorizes the SEC—but not other litigants—to bring civil aiding and abetting actions. See 15 U.S.C. § 78t(e); SEC v. U.S. Envtl., Inc., 155 F.3d 107, 113 (2d Cir. 1998). Here, too, Congress has the opportunity to expand civil liability under the CCTA to extend to aiders and abettors. Since it has not done so, the Court finds that plaintiff's aiding and abetting claims are without statutory sanction.

Accordingly, the City's aiding and abetting claims are dismissed.

## II. Leave to Appeal

"It is a basic tenet of federal law to delay appellate review until a final judgment has been entered." Koehler v. Bank of Bermuda Ltd., 101 F.3d 863, 865 (2d Cir. 1996) (citing Coopers & Lybrand v. Livesay, 437 U.S. 463, 475, 98 S.Ct. 2454, 2461 (1978)). An exception to this general rule is set forth in 28 U.S.C. § 1292(b). Section 1292(b) allows permissive appeals of non-final orders upon the consent of both the district court and the court of appeals. A district court may certify an order for interlocutory appeal when the court is "of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). After the district court certifies an order for interlocutory appeal, the court of appeals has discretion whether to entertain the appeal. See id.

("The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order . . . ."); Koehler, 101 F.3d at 866 ("Section 1292(b) vests review of an interlocutory order within our discretion and we may decline at any time to decide the issue presented."). If the court of appeals chooses to hear the certified appeal, it "may assume jurisdiction over the entire order, not merely over the question as framed by the district court." City of New York v. Beretta U.S.A. Corp., 524 F.3d 384, 391-92 (2d Cir. 2008) (citing United States v. Stanley, 483 U.S. 669, 676-77, 107 S.Ct. 3054, 3060 (1987)).

The Second Circuit has held repeatedly that "use of this certification procedure should be strictly limited because only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment." In re Flor, 79 F.3d 281, 284 (2d Cir. 1996) (alteration in original) (internal quotation marks omitted); see Koehler, 101 F.3d at 865 ("Section 1292(b)'s legislative history reveals that although the law was designed as a means to make an interlocutory appeal available, it is a rare exception to the final judgment rule that generally prohibits piecemeal appeals."); Nat'l Asbestos Workers Med. Fund v. Philip Morris, Inc., 71 F. Supp. 2d 139, 161 (E.D.N.Y. 1999) ("As the court of appeals for the Second Circuit has repeatedly advised, section 1292(b) was designed to be a rarely used exception to the final judgment rule."); see also Westwood Pharm., Inc. v. Nat'l Fuel Gas Distrib. Corp., 964 F.2d 85, 89 (2d Cir. 1992) ("[W]e urge the district courts to exercise great care in making a § 1292(b) certification."). Even if the district court concludes that the three factors in § 1292(b) are met, the district court still has "unfettered discretion" to deny leave to appeal. See Nat'l Asbestos, 71 F. Supp. 2d at 162 ("The legislative history, congressional design and case law indicate that district court judges retain unfettered discretion to deny certification of

an order for interlocutory appeal even where the three legislative criteria of section 1292(b) appear to be met."). The certification process is "reserved for those cases where an intermediate appeal may avoid protracted litigation." Koehler, 101 F.3d at 865-66.

There is no question that this Court's order denying defendants' motion to dismiss involves a "controlling question of law." Reversal of this Court's determination that New York Tax Law § 471 constitutes an "applicable" tax under the CCTA would result in dismissal of this action. See Klinghoffer v. S.N.C. Anchille Lauro, 921 F.2d 21, 24 (2d Cir. 1990) ("Although the resolution of an issue need not necessarily terminate an action in order to be 'controlling,' it is clear that a question of law is 'controlling' if reversal of the district court's order would terminate the action." (internal citations omitted)).

Defendants to date have not met their burden of demonstrating that "there is substantial ground for difference of opinion" with regard to this Court's decision. See In re Flor, 79 F.3d at 284 ("[I]t is the duty of the district judge . . . to analyze the strength of the arguments in opposition to the challenged ruling when deciding whether the issue for appeal is truly one on which there is a substantial ground for dispute." (internal quotation marks omitted)); SPL Shipping Ltd. v. Gujarat Cheminex Ltd., No. 06 Civ. 15375, 2007 WL 1119753, at *2 (S.D.N.Y. Apr. 12, 2007) ("For there to be a substantial ground for difference of opinion under the law, 28 U.S.C. § 1292(b), there must be substantial doubt that the district court's order was correct." (internal quotation marks omitted)). The determination that a tax duly enacted by the legislature is "applicable" notwithstanding the executive branch's policy not to enforce it rested on the well-established principle that the legislature, not the executive, is the branch of government charged with making the laws. See, e.g., Barrett v. Indiana, 229 U.S. 26, 30, 33 S.Ct. 692, 693 (1913) ("It is the province of the legislature to make the laws, and of the courts to enforce them."). In

addition, the only other cases dealing with the precise issue of the interplay between the CCTA and § 471 hold as this Court does. See United States v. Kaid, 241 Fed. Appx. 747, 750 (2d Cir. 2007); United States v. Morrison, 521 F. Supp. 2d 246, 251-52 (E.D.N.Y. 2007).

Furthermore, the Court is not persuaded that an immediate appeal at this juncture would materially advance the ultimate termination of this litigation. The parties have engaged in discovery, and the City is prepared to move forward with a motion for summary judgment. Although reversal of this Court's ruling would likely terminate the litigation, affirmance could result in substantial delay, with the parties finding themselves back in this same position many months from now. The City's intention to move for summary judgment carries with it the possibility for further appeals down the road. The Court considers it more efficient to proceed to summary judgment briefing now, rather than putting this case on hold so that an appeal can run its course. Accordingly, defendants' motion for leave to file an immediate appeal is denied.

## IV.    Conclusion

For the foregoing reasons, defendants' motion to dismiss the City's aiding and abetting claims is granted, and defendants' motion for leave to file an immediate appeal is denied. The Court shall issue a separate order setting a briefing schedule for the City's motion for summary judgment.

SO ORDERED.

Dated: Brooklyn, New York
       March 11, 2009

                                            Carol Bagley Amon
                                            United States District Judge