# Exhibit 2

To the January 14, 2011
Declaration of Eric Proshansky

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Magistrate No. 08 - 3636 (MF) |
| v. | : | |
| JOSEPH ROOSA and RITA ROOSA | : | **CRIMINAL COMPLAINT** |

I, the undersigned complainant, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

Between in or about May 2004, and in or about April 2006, in Essex and Hudson Counties, in the District of New Jersey and elsewhere, defendants Joseph Roosa and Rita Roosa did:

### SEE ATTACHMENT A

I further state that I am a Special Agent for the United States Bureau of Alcohol, Tobacco, Firearms & Explosives, and that this complaint is based upon the following facts:

### SEE ATTACHMENT B

continued on the attached pages and made a part hereof.

_____
Robert Capriglio, Special Agent
United States Bureau of Alcohol,
Tobacco, Firearms & Explosives

Sworn to before me and subscribed in my presence,

September 19, 2008, at Newark, New Jersey

Honorable Mark Falk
United States Magistrate Judge                    Signature of Judicial Officer

**CONTENTS APPROVED**

**UNITED STATES ATTORNEY**

By: _____

Assistant United States Attorney Ronald Chillemi

Date: September 19, 2008

## ATTACHMENT A

knowingly and intentionally conspire and agree with each other and with others to ship, transport, receive, possess, sell, distribute, and purchase over 60,000 contraband cigarettes, contrary to Title 18, United States Code, Section 2342(a).

In violation of Title 18, United States Code, Section 371.

## ATTACHMENT B

I, Robert Caprioglio (the "affiant'), state that I am a Special Agent with the United States Bureau of Alcohol, Tobacco, Firearms & Explosives (the "BATFE"), and further state that having conducted an investigation and having discussed this matter with other investigators of the BATFE and other members of law enforcement, have knowledge of the following facts:

### Background

1. I have been employed as a Special Agent with the BATFE for over twenty-one years, and I am currently assigned to the Newark Division of the BATFE, where I investigate various crimes, including cigarette trafficking. During the course of my tenure with the BATFE, I have participated in over two hundred investigations of various crimes, including approximately 50 investigations of cigarette trafficking.

2. Investigation by the BATFE and other federal law enforcement agencies revealed that Joseph and Rita Roosa ("the Roosas") have sold large quantities of contraband cigarettes in New Jersey through a Native American company called All-American Tobacco located in Salamanca, New York.

3. At all times relevant to this complaint, neither Joseph nor Rita Roosa was Native American nor part of any Native American tribe.

### Legal Framework

4. Each of the United States (including the state of New Jersey) imposes a tax on cigarettes, which varies from state to state. Payment of this tax is demonstrated by the placement of a "tax stamp" on the package of cigarettes.

5. Companies owned by Native Americans may legally purchase cigarettes without paying the applicable state cigarette tax provided that the cigarettes are sold: (1) to members of their tribe; (2) on the reservation, and (3) for personal consumption.

6. Illegal cigarette traffickers often obtain cigarettes while avoiding the applicable state cigarette tax by purchasing cigarettes from Native-American owned companies. The illegal cigarette traffickers then resell these cigarettes at prices higher than that paid by the illegal cigarette traffickers but below market value, resulting in substantial profits to the illegal cigarette traffickers and avoidance of the applicable state cigarette tax.

7. To combat such illegal cigarette trafficking, Congress enacted the Contraband Cigarette Trafficking Act, 18 U.S.C. § 2342 ("CCTA"), which makes it unlawful for any person (with limited exceptions) to ship, transport, receive, possess, sell, distribute or purchase "contraband cigarettes." Prior to March 9, 2006, the CCTA defined "contraband cigarettes" to mean a quantity of more than 60,000 cigarettes that bear no evidence of the payment of the cigarette tax of the state in which the cigarettes are found. On or about March 9, 2006, Congress reduced the quantity of cigarettes necessary to violate the CCTA to 10,000. For reference, one package of cigarettes contains twenty cigarettes. Ten packages constitutes a carton, and a carton thus contains 200 cigarettes. 60 cartons typically constitutes a "case" or "master case," and contains 12,000 cigarettes. 30 cartons typically constitutes a "half-case," and contains 6,000 cigarettes. 300 cartons, or five cases, constitutes the pre-2006 amendment statutory limit of 60,000 cigarettes. 50

cartons, or approximately .83 cases, constitutes the post-2006 amendment statutory limit of 10,000 cigarettes.

8. The CCTA applies to all persons except certain "exempt persons," which category is limited to certain licensed manufacturers and distributors. The phrase "exempt persons" does not include Native American-owned companies who sell cigarettes: (1) to non-tribal members, (2) off the reservation, or (3) not for personal consumption.

9. To further combat illegal cigarette trafficking, Congress enacted the Jenkins Act, 15 U.S.C. Sections 375-76 (the "Jenkins Act"), which requires any person or company which sells cigarettes in interstate commerce (as from New York to New Jersey) to anyone but a person licensed by the receiving state, or advertises cigarettes for such sale, to, *inter alia*, provide monthly notice ("Jenkins reports") to the receiving state of each sale made in that state so that the applicable taxes of the receiving state may be collected.

10. From in or about May, 2004 through on or about July 1, 2004, the applicable state of New Jersey cigarette tax was $2.05 per package, $20.50 per carton, or approximately $1,230 per case. From in or about July 12, 2004 through in or about April 2006, the applicable state of New Jersey cigarette tax was $2.40 per package, $24.00 per carton, or $1,440 per case.

Object Of The Conspiracy

11. The primary object of the conspiracy was to avoid payment of the state of New Jersey cigarette tax so that the conspirators could sell contraband cigarettes at a substantial profit.

3

Manner And Means Of The Conspiracy

12. It was part of the conspiracy that sometime prior to in or about March 2003, Joseph Roosa approached a member of the Seneca Indian Nation ("CI #1"), who was a resident of the Allegany Reservation, a Native American reservation located in Cattaraugus County in western New York state ("the reservation"). Joseph Roosa requested that CI #1 allow he and Rita Roosa to use CI #1's status as a Native American to create a tobacco distribution company in CI #1's name on the reservation in exchange for a small portion of the proceeds of the company. CI #1 agreed.

13. It was further part of the conspiracy that in or about March 2003, the Roosas proceeded to create and operate All-American Tobacco from Salamanca, New York, which was located on the reservation. In general, Joseph Roosa's role was to initiate the company and to handle advertising for the company, while Rita Roosa's role was to manage the daily operations of the company. The Roosas and All-American Tobacco obtained cigarettes which were not subject to any state tax due to All-American Tobacco's titular status as a Native American company. The Roosas then re-sold these cigarettes: (1) to non-tribal customers, (2) off the reservation, including in New Jersey. The Roosas and All-American Tobacco thus avoided any applicable state cigarette taxes (including those of New Jersey), in violation of the CCTA.

14. It was further part of the conspiracy that All-American Tobacco's sales were conducted almost exclusively through internet orders. Joseph Roosa developed All-American Tobacco's website, which, *inter alia*:

4

    a.    Advertised discount cigarettes for sale to the general public;

    b.    Stated "Our tobacco products are for personal use only and not for resale. All sales are consummated on the Allegany Indian Reservation."

15. It was further part of the conspiracy that between in or about May 2004 and April 2006, All-American Tobacco's website offered only cigarettes for sale.

16. A review of United States Postal Service ("USPS") and United Parcel Service ("UPS") records, and interviews of USPS employees, indicated that between in or about May 2004 and in or about April 2006, two New Jersey merchants (CI #2 and CI #3), neither of whom was Native American or part of any Native American tribe, received over 1,000 boxes or parcels from All-American Tobacco at two addresses in Hudson and Essex Counties, New Jersey (the "Hudson and Essex County addresses"). Subsequent surveillance revealed that the size of many of these boxes and parcels was consistent with a case or a half-case of cigarettes. One USPS employee interviewed for this investigation stated that in the delivery of these boxes or parcels, he/she frequently observed cigarette cartons (e.g., Marlboro Menthol, Newport, or Salem cigarettes) through tears in the parcels caused by, *inter alia*, damage during transport of the boxes and parcels.

17. Surveillance observed the delivery by UPS to CI #2 of five or more large boxes on multiple occasions during the period of the conspiracy. For example, on or about November 24, 2004, UPS delivered fifteen boxes, to CI #2 at an address in Hudson County, New Jersey. Review of UPS records indicated that the sender of the fifteen boxes

was All-American Tobacco. CI #2 later confirmed that each of the fifteen boxes contained either a case or half-case of contraband cigarettes which he or she had ordered from Rita Roosa of All-American Tobacco. These fifteen cases contained an approximate minimum total of 90,000 cigarettes (fifteen half-cases multiplied by approximately 6,000 cigarettes in each case), well above the former CCTA requirement of 60,000 cigarettes and the current CCTA requirement of 10,000 cigarettes for this shipment alone.

18. A review of USPS and bank records indicate that CI #2 and CI #3 paid approximately $4.9 million for the over 1,000 boxes and parcels, including approximately $4.4 million in money orders and approximately $500,000 in cash. These funds were deposited into bank accounts controlled by the Roosas. The names of both Joseph and Rita Roosa appear as signers on the All-American business bank account, with CI #1 as the owner of the account. The physical deposits (i.e., excluding electronic transfers) into these accounts accounted for over 50% of the deposits into those accounts during the entire period of in or about May 2004 through April 2006. CI #2 and CI #3 informed members of law enforcement that these payments were in exchange for contraband cigarettes. CI #2 and CI #3 purchased approximately 1.75 million packages of cigarettes, or approximately 175,000 cartons, from the Roosas and All-American Tobacco, resulting in the avoidance of over $3 million of state of New Jersey cigarette taxes.

19. CI #2 also informed members of law enforcement that the cigarettes purchased from All-American Tobacco were re-sold to Chinese restaurants around New Jersey, which re-sold the cigarettes in turn to other retailers or directly to cigarette

smokers.

20. CI #2 further informed members of law enforcement that on at least one occasion during the period of in or about May 2004 through April 2006, he informed Rita Roosa, who was using the name "Mrs. Cheng," that he planned to resell the cigarettes which he purchased from All-American Tobacco to Chinese restaurants in New Jersey. Rita Roosa then informed CI #2, in sum and substance, that he should be careful, which CI #2 understood as a warning regarding law enforcement's efforts to combat contraband cigarette trafficking.

21. Given the: (1) USPS, UPS, and bank records, (2) size and number of parcels, and (3) interviews of USPS employees, and (4) information provided by CI #2 and CI #3, your affiant believes that between May 2004 and April 2006, the Roosas sent far in excess of 60,000 cigarettes through All-American Tobacco to the Hudson and Essex County addresses. In support of this belief, the affiant notes, *inter alia*, that just ten boxes or parcels containing half-cases of cigarettes total approximately 60,000 cigarettes. In this matter, the evidence shows that All-American Tobacco sent over 1,000 boxes or parcels containing cases or half-cases of cigarettes, and as described in paragraph 17 above, individual shipments which exceeded the former and current CCTA limits..

22. At the request and direction of the United States, CI #3 made controlled purchases of contraband cigarettes, totalling approximately 67,000 cigarettes over an approximately ten-month period in 2007-8 (one order of which constitutes the overt act discussed in paragraph 24 below) from Rita Roosa through All-American Tobacco. CI #3

7

requested that Rita Roosa send his or her purchases of contraband cigarettes to an address in New Jersey. Rita Roosa complied with this request and sent the approximately 67,000 contraband cigarettes from New York to New Jersey.

23. At all relevant times, the cigarettes sold by the Roosas and All-American Tobacco in New Jersey did not bear the applicable New Jersey tax stamp. At all relevant times, the Roosas and All-American Tobacco failed to file Jenkins reports for their cigarette sales in the state of New Jersey. Also, at all relevant times, neither the Roosas nor All-American Tobacco were licensed nor authorized under the CCTA, the Jenkins Act, the State of New Jersey, nor any other authority to sell cigarettes in New Jersey which did not bear the applicable state of New Jersey tax stamp. The failure of the Roosas and All-American Tobacco to comply with these requirements indicates their intention to avoid payment of the applicable New Jersey tax on cigarettes.

Overt Act

24. On or about October 18, 2007, CI #3 made a consensual recorded telephone call to Rita Roosa at All-American Tobacco. CI #3 ordered 225 cartons of contraband cigarettes (totalling 45,000 cigarettes) to be delivered to an address in Essex County, New Jersey. Rita Roosa accepted the order and had 225 cartons of contraband cigarettes delivered to the specified address over the course of approximately one week. CI #3 paid All-American Tobacco for these contraband cigarettes in advance using $6,522.75 in United States Postal Service money orders.