UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X     Docket No. 06 CV 3620 (CBA)
THE CITY OF NEW YORK,

                 *Plaintiff*,

      -against-

MILHELM ATTEA & BROS., INC., DAY
WHOLESALE, INC., GUTLOVE & SHIRVINT,
INC., MAURO PENNISI, INC., JACOB KERN &
SONS, INC., WINDWARD TOBACCO, INC., and
CAPITAL CANDY COMPANY, INC.,

                 *Defendants*.
------------------------------------------------------------X

## MEMORANDUM OF LAW OF DEFENDANT MAURO PENNISI, INC.
## IN OPPOSITION TO PLAINTIFF'S CROSS MOTION FOR A SUMMARY JUDGMENT

Dated January 23, 2012
New York, NY


Submitted by:


James F. Simermeyer
Kelly P. Peters
Law Offices of James F. Simermeyer, P.C.
148 Madison Avenue, 16th floor
New York, New York 10016
(P) 212-691-7070

## Table of Contents

I.   Preliminary Statement .................................................................................................... 1

II.  Standard of Review ......................................................................................................... 3

III. Statement of Facts ........................................................................................................... 3

   a.  Statement of Indisputable Facts ................................................................................ 3

   b.  Unresolved Issues Of Material Fact ......................................................................... 5

IV.  Argument ......................................................................................................................... 7

   a.  Notwithstanding this Court's prior ruling in *Milhelm Attea I*, the City has Failed to

   Demonstrate that It Has Article III Constitutional Standing. .................................. 7

     i.   Whether The City Sustained An Injury Is An Unresolved Issue Of Material Fact. 8

     ii.  Whether There Is A Causal Connection Between Pennisi's Conduct And The

     City's Hypothetical Injury Is An Unresolved Issue Of Material Fact. ............................ 9

     iii.  The City Does Not Have Standing With Respect To Its Remaining Claims For

     Damages. ................................................................................................................... 12

   b.  The City's Theory for Damages and Penalties are Insufficiently Pleaded, Speculative

   and Not Based on Facts. ............................................................................................. 13

   c.  The City's Theory of Liability Under the CCTA and CMSA is Patently Flawed ...... 16

V.   CONCLUSION ............................................................................................................. 20

**Table of Authorities**

**Cases**

*Flores-Figueroa v. United States*, 556 U.S. 646 (2009) ............................................................ 18, 19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................................. *passim*

*Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) ................................ 3

*Scott v. Harris*, 550 U.S. 372 (2007) ................................................................................... 3, 12

*Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976) ........................... 7

*Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520 (2d Cir. 1992) .............................................. 3

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................ 8

*Baez v. Jetblue Airways Corp.*, 2009 U.S. Dist. LEXIS 67020 (E.D.N.Y. 2009) ........................ 14

*City of New York v. Milhelm Attea & Bros., Inc.*, 550 F. Supp. 2d 332 (E.D.N.Y. 2008) ..... *passim*

*Coppola v. Bear Stearns & Co.*, 499 F.3d 144 (2d Cir. 2007) ..................................................... 8

*D'Angelo-Fenton v. Town of Carmel*, 470 F. Supp. 2d 387 (S.D.N.Y. 2007) .............................. 14

*City of New York v. Golden Feather*, 2009 U.S. Dist. LEXIS 76306 ..................................... *passim*

*Kagan v. Taylor*, 558 F.Supp. 396 (E.D.N.Y. 1983) ................................................................ 11

*Kirby v. Wildenstein*, 784 F. Supp. 1112 (S.D.N.Y. 1992) ........................................................ 13

*McKenzie v. Dow Jones & Co.*, 2008 U.S. Dist. LEXIS 55387 (S.D.N.Y. July 22, 2008) .......... 14

*SEC v. Church Extension of the Church of God, Inc.*, 429 F.Supp.2d 1045 (S.D. Ind. 2005) ..... 15

*SEC v. Moran*, 944 F.Supp. 286 (S.D.N.Y. 1996) .................................................................... 15

*SEC v. Opulentica*, 479 F.Supp.2d 319, 331 (S.D.N.Y. 2007) ................................................... 15

*Transway Finance Co., Inc. v. Gershon*, 92 F.R.D. 777 (E.D.N.Y.1982) .................................... 11

*U.S. v. Morrison*, 685 F. Supp. 2d 339 (E.D.N.Y. 2010) .......................................................... 12

*Cayuga Indian Nation of New York v. Gould*, 14 N.Y.3d 614 (2010) .................................... *passim*

*City of N.Y. v. Smokes-Spirits.com, Inc.*, 911 N.E.2d 834 (2009) ............................................... 12

*Matherson v. Marchello*, 473 N.Y.S.2d 998 (2d Dept. 1984) .................................................... 13

*Drug Research Corp. v. Curtis Publishing Co.*, 7 N.Y.2d 435 (N.Y. 1960) ................................ 14

**Statutes**

Contraband Cigarette Trafficking Act ("CCTA"), 18 U.S.C. § 2341 *et seq.* ............................... 17

18 U.S.C. § 1028A(a)(1) ................................................................................................................. 18

Fed. R. Civ. P. 9(g) ........................................................................................................................ 13, 14

Fed. R. Civ. P. 56 .......................................................................................................................... *passim*

Fed. Civ. P. R. 26(a) ........................................................................................................................ 5

N.Y. Tax L. § 471 *et seq.* ............................................................................................................... 4

Cigarette Marketing Standards Act ("CMSA"), N.Y. Tax. L. § 483 *et seq.* ........................... *passim*

## I.       Preliminary Statement

The defendant "Mauro Pennisi, Inc. ("Pennisi") submits this memorandum of law in opposition to plaintiff City of New York's (the "City") cross motion for summary of judgment ("Motion").  The City's motion should be denied for the following reasons.

First and foremost, the City has not established an injury in fact or a causal connection between Pennisi's conduct and its hypothetical injury.  The City's complaint alleges that it was injured in the form of substantial lost tax revenue stemming from the sale of lower priced, unstamped cigarettes by Indian retailers on Indian lands.  The City has not submitted evidence that proves that it *actually* lost such tax revenue to any degree of certainty.  Without proving an injury and causation, the City cannot prevail on summary judgment and this matter should be dismissed for lack of Constitutional Article III standing.

Similarly, the City's claim for special monetary damages also fails because the City has not sufficiently pled a quantifiable injury or how such injury could be calculated.  Rule 9 of the Federal Rules of Civil Procedure require that special damages must be pleaded with particularity.  The City's attenuated theory of damages which it describes for the first time in its motion papers is inconsistent, flawed and unreliable.

The City's evidence offered in support of its motion creates issues of material fact which cannot sustain a motion for summary judgment.  That evidence, reviewed in a light most favorable to the defendants, does not support a finding that the City sustained hundreds of millions of dollars in lost tax revenue as it alleges and further demonstrates how it would be impossible for the Court to make such conclusion.

The City also argues that it is entitled to civil penalties in addition to damages.  However, such remedy would be extraordinary in these circumstances because Pennisi's conduct was at all

times in compliance with State law as enforced by New York Department of Taxation and Finance ("DTF"). At any time, the DTF could have directed Pennisi to cease its sales of unstamped cigarettes to reservation retailers, but instead chose not to. In fact, the DTF expressly authorized Pennisi's sales of unstamped cigarettes to its Indian customers until the relevant tax law was changed. There is accordingly no evidence that Pennisi violated any New York law, knowingly or otherwise. The City's claim for penalties and attorney's fees under the CCTA should therefore be denied because it is unsupported by law.

Finally, the City's theory of liability under the CCTA and CMSA omit evidence that Pennisi had the requisite state of mind to be liable under each respective statute. In order to violate the CCTA, the offender must have known that the alleged cigarettes were contraband as defined therein. Penissi has consistently believed as per the DTF's opinion that those cigarettes were in fact not contraband. Accordingly, Penissi cannot be liable under the CCTA.

Similarly, to be liable under the CMSA the defendant must have had the intent to avoid paying taxes or the intent to injure competitors. That "intent" cannot be inferred by the evidence on the record in consideration of Pennisi's good faith reliance on the DTF's direction.

For these reasons, as well as the insurmountable issues of material fact, the City's motion for summary judgment should be denied, and the defendants' motion for summary judgment seeking dismissal of this case should be granted.

Finally, the Court should note that defendants' motions for summary judgment have been fully briefed since November 2010. Nevertheless the City inappropriately submits arguments in *sur*-reply to the defendants' motions for summary judgment without leave of the Court. Although Pennisi is opposed to the City submitting such an *ad hoc sur*-reply, Pennisi

incorporates the arguments as well as the arguments of our co-defendants in defendants' pending motions for summary judgment, as if fully stated herein and in rebuttal to the City's motion.

## II.        Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir. 1992).  When considering a motion for summary judgment, all genuinely disputed facts must be resolved in favor of the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007).  If, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party, a grant of summary judgment is appropriate. *Scott*, 550 U.S. at 380 (citing *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587 (1986).

## III.   Statement of Facts

### a.  Statement of Indisputable Facts

Pennisi is a New York State licensed cigarette wholesaler and stamping agent.  As such, Pennisi is required to submit periodic reports to the State of New York Department of Taxation and Finance ("DTF") including Form CG-6 which provides an accounting of all unstamped cigarettes that are supplied to Indian retailers.  See Affidavit of Sal Pennisi, dated January 23, 2012 ("Pennisi Aff.") at ¶¶ 11-12.  Pennisi duly filed the Form CG-6 each month in accordance with DTF mandates. *Id.*

3

In addition to being licensed by the State of New York, Pennisi is also licensed by the City of New York's Department of Finance to supply cigarettes to cigarette retailers in New York City.  Pennisi Aff. ¶ 5.

Pennisi has never had its license revoked by either the City of New York or the State of New York.  *Id.* at ¶ 16.  The City and State are empowered to revoke Pennisi's licenses in the event that it violates the laws of New York State.

In June 2010, the State of New York amended N.Y. Tax L. § 471 *et seq.*  thereby requiring all cigarettes supplied by New York to bear tax stamps.  Affirmation of James F. Simermeyer, dated January 23, 2012 ("Simermeyer Aff.") ¶ 7.  That amended provision of N.Y. Tax Law became enforceable on June 21, 2011, following a series of legal challenges brought by several New York Indian Nations.  *Id.*

Prior to the Amended Tax Law becoming enforceable by the State on June 21, 2011, the State had implemented a policy of forbearance whereby it allowed State licensed stamping agents to supply unstamped cigarettes to retailers situated on Indian Nation lands.  *See* **Exhibit B** to Simermeyer Aff., enclosing the *State of New York Commissioner of Taxation and Finance, Advisory Opinion* Petition No. M06316A, March 16, 2006 ("Advisory Opinion"). The State did not limit the quantity of unstamped cigarettes that licensed stamping agents sold to on-reservation retailers.  The State did ensure the wholesalers that "if the Department (DTF) decides to revise its policy (of forbearance) in the future, it will provide adequate notice to all affected stamping agents." *Advisory Opinion* at 4.

The City of New York does not have a cigarette tax collection mechanism that is independent from the State of New York.  The City therefore relies on the State to collect cigarette excise taxes on its behalf.

It is undisputed that once the Amended Tax Law became enforceable on June 21, 2011,
Pennisi discontinued selling unstamped cigarettes to its Indian customers.  Simermeyer Aff. ¶8.

**b.  Unresolved Issues Of Material Fact**

There are still many issues of material fact that have not been resolved thus far.  Of
obvious significance, the City has not quantified its alleged injury.  Rather, the City chooses to
formulate a calculation of damages that is loosely based on the estimated number of cigarettes
that may have been purchased from Pennisi customers and resold in the City's jurisdiction.  In
doing so, the City has not resolved how evidence of alleged trafficking could be fairly traceable
to a cognizable tax loss.  Such issue is further complicated by the indisputable fact New York
City has the highest cigarette tax rate in the United States, thus making everywhere else a likely
source for lesser priced cigarettes.

Much of the City's evidence accompanying its motion is also at odds with many of its
propositions and consequently warrants the denial of the City's motion.  For instance, the
Affidavit of Dr. Thomas Frieden, dated October 28, 2008[1], demonstrates how the City cannot
accurately prove that it lost a sum certain of tax revenue.  In particular, Dr. Frieden opined in ¶ 6
that "a 10 percent increase in the real price of cigarettes reduces overall cigarette consumption by
approximately 4 percent."  Dr. Frieden expanded on this logic to conclude in ¶7 that in a world
without Indian Reservations "over 7,000 New Yorkers would quit smoking…"  Assuming Dr.
Frieden is correct, there are significant issues of fact as a result of the City having not reduced its
hypothetical tax loss to account for individuals who have quit smoking.

Another obvious issue is the fact that the City repeatedly relies on the assumption that a
"master case" of cigarettes contains 60 cartons.  See e.g, CI Affidavit at ¶2; Mars Affidavit at

---

[1]      Several of the City's affidavits are submitted by witnesses that were not disclosed pursuant to Fed. Civ. P.
R. 26(a).  Dr. Frieden's affidavit, in particular, should be excluded on this motion because he was not disclosed as
an expert witness pursuant to Fed. R. Civ. P. 26(a)(2).

¶¶8,13; Young Affidavit at ¶ 11. That is simply not accurate. Many cigarette brands are sold in master cases of 50 cartons, while others are sold in cases of 60 cartons. Aff. of Pennisi at ¶ 10. This discrepancy further calls into question the reliability of the City's evidence as it always refers to 60 carton master cases, thus failing to accurately take into account how many master cases are in fact comprised of 50 cartons. The City's calculation relies on the number of cartons in a master case as a variable in all of its damages and penalty formulas. The inaccuracy of the City's calculation is an issue of material fact.

The Court should also note how much stock the City places in the affidavit of its confidential informant. Notwithstanding the enormous credibility issues with that witness, it is material that the confidential informant states that she "dealt most frequently with Golden Feather and Sean Morrison, and least frequently with Monique's." CI Affidavit at ¶7. The fact that the City has reached a settlement agreement with Sean Morrison in the *City v Golden Feather* case should consequently require the City to subtract out inventories attributable to him because the taxes relating to those cigarettes have been spoken for. See Simermeyer Aff. ¶9.

Finally, the City necessarily must resolve the double taxation issue it faces with contemporaneously seeking damages on a theory of lost tax revenue from the individual defendants in the *Golden Feather* case, and harmonize it with the fact that the Pennisi and the *Golden Feather* defendants are also being sued by Suffolk County for the same taxes. The Court can take judicial notice of the fact that Suffolk County and the City of New York cannot be entitled to taxes on the same goods, by virtue of a geographic impossibility. It would be manifestly unjust for Penissi to be liable to pay taxes on the same goods in two exclusive jurisdictions.

Any of the above issues of material fact are sufficient to deny the City's motion for summary judgment.

## IV.     Argument

### a.   Notwithstanding this Court's prior ruling in *Milhelm Attea I*, the City has Failed to Demonstrate that It Has Article III Constitutional Standing.

The City does not have Article III standing sufficient for this court to find the defendants liable in this case.  Article III standing requires the plaintiff to demonstrate three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  First, the plaintiff must demonstrate an injury in fact that is (a) concrete and particularized, and (b) actual or imminent and not *"hypothetical or conjectural"*.  *Id.*  Second, plaintiff must demonstrate "a causal connection between the injury and the conduct complained of -- the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court'"  *Id.*  (citing *Simon* v. *Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976).  Third, plaintiff must show that it is likely the injury will be redressed by a favorable decision of the Court. *Id.* The City, as the party invoking federal jurisdiction, carries the burden of demonstrating that it has standing.  See *Lujan*, 504 U.S. at 561

At the outset of these proceedings, this Court found that the City had Article III Standing. See *City of New York v. Milhelm Attea & Bros., Inc.*, 550 F. Supp. 2d 332, 340-341 (2008). ("*Milhelm Attea I*").  In making its finding, the Court stated that "[f]rom the facts alleged, *it appears the City could demonstrate* that the price differential created by defendants' sale of untaxed cigarettes to reservation retailers impacts the market in a way that deprives the City of substantial tax revenue." *Id* at 341. (*emphasis added*).

7

That conclusion was made in the context of defendants' motion to dismiss and therefore considered the issue of standing by determining whether the City's allegations as pleaded were sufficient rather than on any empirical evidence (or lack thereof) before the Court. *See Id.* Moreover, the Court only found standing in consideration of the City's claim for injunctive relief, which has been rendered moot by the Tax Law Amendments; and not based on the City's pleaded or proven claims for damages or penalties. It is therefore notable that in nearly four years since that decision was entered, the City has not *actually demonstrated* with credible evidence that such injury does in fact exist; let alone that there is a causal connection between the hypothetical injury and the defendants' allegedly wrongful conduct.

### i. Whether The City Sustained An Injury Is An Unresolved Issue Of Material Fact

The City's claims that it sustained injury by defendants' conduct remains largely speculative and entirely hypothetical. A hypothetical injury does not give rise to a finding of Article III standing. *See Lujan* 504 U.S. at 561. In order to prevail on summary judgment, the City must show "that there is no genuine dispute as to any material fact…" Fed. R. Civ. P. 56(a). "Material facts are those which 'might affect the outcome of the suit under the governing law,' and a dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Coppola v. Bear Stearns & Co.*, 499 F.3d 144, 148 (2d Cir. 2007), quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, the extent of injury sustained by the City, if any, is a material fact that must be resolved before the Court can grant a judgment as a matter of law.

The City has not produced evidence sufficient for the Court to find that the City was actually deprived of tax revenue by virtue of Pennisi's sales of unstamped cigarettes to Poospatuck retailers. In order to do so, the City must show that a quantifiable number of taxable

8

sales in New York City were in fact replaced by sales of cigarettes that at one time passed through Pennisi's operations.  Suffice it to say that the City's injury relies entirely on the speculation that a purchaser of unstamped cigarettes in New York City would have opted to purchase a stamped pack had the unstamped pack been unavailable.  Such assumption of fact falls far short of proving an injury necessary for Article III standing, and is a significant issue of material fact that requires the dismissal of the City's motion.

ii. **Whether There Is A Causal Connection Between Pennisi's Conduct And The City's Hypothetical Injury Is An Unresolved Issue Of Material Fact.**

To prevail on summary judgment, the City must prove that there is a causal connection between Pennisi's DTF approved sales of unstamped cigarettes to the City's hypothetical injury.  There must be a causal connection from the injury that is fairly traceable to the challenged conduct of the defendant.  *Lujan*, 504 U.S. at 561.

The City's motion for summary judgment fails because there are still numerous issues of material facts concerning the City's theory of causation.  First, the City has not proven that a quantifiable number of unstamped cigarettes sold by Pennisi to Poospatuck retailers were then resold to non-Unkechauge Indians.  Second, the City has not established that those particular cigarettes were then transported to the City of New York for resale.  Third, the City has not shown how the same cigarettes were in fact resold within the City of New York.  Finally, the City has failed to prove how many taxable sales would have otherwise occurred had Pennisi's cigarettes been unavailable.  Being that the City has not accurately quantified a tax loss, it unavoidably fails to demonstrate how Pennisi brought about such hypothetical injury.

9

The City's theories of injury and causation are not adequately supported by the evidence on the record[2]. This is implicit by the fact that City asks the Court to enter summary judgment based on broad and gratuitous assumptions. For example, the City asks this Court to make the factual assumption that 9,000 cartons[3] per week were trafficked from the Poospatuck Reservation from July 2002 to June 2011. *See* City's Memo at 59. ("*Assuming* that amount of trafficking remained constant from July 2002 through June 2011…") (*Emphasis added*). The City necessarily makes that assumption of fact because the testimony for which it relies does not pertain to sales after 2008. *See* Proshansky Decl. Ex. 30 at p 10. (Where the confidential informant testified that she allegedly trafficked cigarettes from 2001 to 2008). Making assumptions about the quantity of cigarettes that were allegedly trafficked into the City, as well as the questionable temporal scope of the injury, create significant issues of material fact that cannot be resolved on the City's motion.

The City also asks the Court to assume that the all the allegedly trafficked cigarettes by its—convicted felon—confidential informant—who was compensated in excess of $60,000 to testify—were entirely attributable Pennisi and Gutlove. ("This loss *should be* apportioned 48% to Gutlove and 52% to Pennisi based on their respective sales volumes.") Such assumption is blatantly false and not supported by the record. It erroneously relies on the assumption that Pennisi and Gutlove were the only two suppliers of unstamped cigarettes on the Poospatuck Reservation[4]. That assumption is not reasonable insofar as the tribal retailers have been

---

[2]   As discussed *infra,* the evidence submitted by the City is dubious, full of unsubstantiated opinions and largely unverified.

[3]   Notably, the 9,000 carton figure is also inaccurate because it is based on the assumption that each master case did in fact contain 60 cartons when the evidence would suggest that the master cases could have been comprised of 50 cartons instead.

[4]   Just because the Unkechauge Nation had licensed only Pennisi and Gutlove to serve as wholesalers for Tribal shops does not prove that they were in fact the only two suppliers of unstamped cigarettes to Poospatuck retailers.

10

purchasing unstamped cigarettes from numerous sources, including but not limited to out of state cigarette wholesalers and other Indian tribes.

The City also asks the Court to assume that a precise number of cigarettes were trafficked to the City for resale based on questionable and incredible evidence. For example, the City relies heavily on the testimony of its confidential informant in the Golden Feather case. However, her testimony is insufficient for summary judgment because of her notable credibility issues. See Exhibit 30 to Proshansky Decl. at p.52 (Where Mari A testified that she was convicted of 6 crimes, including but not limited to credit card fraud, felonies involving the possession of marijuana and unstamped cigarettes); *Id.* at p. 50-51 (Where Mari A testified that she had previously attempted affix counterfeit tax stamps to cigarettes in violation of state and federal law); Id. at 74 (Where Mari A testified that she received approximately $60,000 for agreeing to cooperate with the DTF and testify).

The credibility of the City's witnesses raise serious issues of material fact. It is well settled that the credibility of witnesses raises a material issue that can only be resolved by a trial. *Kagan v. Taylor*, 558 F.Supp. 396, 398 (E.D.N.Y. 1983). *Citing Transway Finance Co., Inc. v. Gershon*, 92 F.R.D. 777 (E.D.N.Y.1982*)*. "Summary judgment is particularly inappropriate when the disputed facts may be colored by the motivations of interested witnesses." *Transway Finance Co.* at 778-779.

Finally, the City has not provided evidence which would permit a conclusion that unstamped cigarettes allegedly trafficked from the Poospatuck Reservation actually replaced sales that would have been subject to State and City taxes. The Honorable Senior Judge Hurley eloquently summarized the identical issue when he denied the City's claims for restitution in a similar case:

11

"[I]t is entirely speculative to presume that any alleged diverted City purchasers would have purchased their cigarettes in the City had Morrison's cigarettes not been available. There is nothing to suggest that such diverted purchasers could not have obtained other unstamped cigarettes originating from a different reservation retailer. Alternatively, they could have purchased unstamped cigarettes from one of the many out-of-state cigarette retailers who are not required to collect state and city taxes at the time of sale. *See City of N.Y. v. Smokes-Spirits.com, Inc.*, 12 N.Y.3d 616, 619, 911 N.E.2d 834, 883 N.Y.S.2d 772 (2009). In fact, given the City's theory that City residents were induced to purchase Morrison's cigarettes because they were less expensive, it would seem more likely that these hypothetically displaced purchasers would have sought out discounted cigarettes from another source rather than pay full price to a City retailer." *U.S. v. Morrison*, 685 F. Supp. 2d 339 (E.D.N.Y. 2010).

Accordingly, Judge Hurley highlights a significant flaw in the City's theory of liability inasmuch as the City cannot accurately quantify its hypothetical tax loss injury.

Taken as a whole, the City's theory of injury and causation remain too speculative to warrant summary judgment. On this motion, all factual inferences are to be made in favor of Pennisi as the non-moving party. See. *Scott*, 550 U.S. at 380. ("all genuinely disputed facts must be resolved in favor of the nonmoving party.") Accordingly, the City's motion should be denied because it has failed to prove that it has been injured in any measurable way, or that such hypothetical injury was attributable to the conduct of the defendants.

### iii. The City Does Not Have Standing With Respect To Its Remaining Claims For Damages.

The City cannot rely on the Court's prior ruling in *Milhelm Attea I* on the issue of standing. That decision clearly found standing in contemplation of the City's request for injunctive relief—and not in regard to the City's ambiguously pleaded claims for monetary damages. *See Milhelm Attea I* at **16 (Where the Court cites to the relevant portions of the CCTA that authorize municipalities to bring forth actions "to prevent and restrain violations of" the CCTA). To this end, the Court opined that "[t]he City's injury may be redressed by requiring

12

the defendants to stamp cigarettes sold to reservation retailers for re-sale to the public…it is not necessary on this motion [to dismiss] to resolve the accuracy of allegations on the economics of cigarette purchasing…" *Id.* Thus, as the Court correctly points out, amended N.Y. Tax L. §471 *et seq.* has effectively redressed the City's viable claims[5]. The City accordingly lacks the redressability element required to have Article III standing.

### b. The City's Theory for Damages and Penalties are Insufficiently Pleaded, Speculative and Not Based on Facts.

Notwithstanding the City's failure to have a sound legal theory supporting its claims, its factual allegations are equally attenuated and cannot support a claim for special monetary damages. "Special damages must be pleaded with particularity." Fed. R. Civ. P. 9(g). "The rules surrounding the pleading and proof of special damages are stringent and well-articulated. Special damages are limited to losses having pecuniary or economic value, and must be fully and accurately stated, with sufficient particularity to identify actual losses." *Kirby v. Wildenstein*, 784 F. Supp. 1112, 1116 (S.D.N.Y. 1992) (internal citation and quotations omitted). *See Matherson v. Marchello*, 473 N.Y.S.2d 998, 1001 (2d Dept. 1984); *See also Drug Research Corp. v. Curtis Publishing Co.*, 7 N.Y.2d 435, 440 (N.Y. 1960); *See also Baez v. Jetblue Airways Corp.*, 2009

---

[5]     Although no formal ruling on the City's motion for a preliminary injunction has been entered, the Court indicated that such ruling would be unnecessary.

> THE COURT: And the City has no motions that you're making; correct? I mean, you talked about a preliminary injunction motion. That's done, the new law did that for you, or did that for me or whoever. You don't have to make a motion, I don't have to rule on it; correct? There is no preliminary injunction.
>
> MR. PROSHANSKY: We have that pending motion for preliminary injunction. What it does, though, is it addresses many of the issues that will be relevant to damages. So what we could do is simply supplement that brief --
>
> THE COURT: But you're no longer asking for a preliminary injunction. What would you be asking for, summary judgment?

See Exhibit A to Simermeyer Aff.

U.S. Dist. LEXIS 67020 *25 (E.D.N.Y. 2009) (defining "special damages" as a "specific and measurable loss.").

Furthermore, special damages "must be alleged with sufficient particularity to identify actual losses and be related causally to the alleged tortious acts." *Baez at *25 (quoting McKenzie v. Dow Jones & Co.*, 2008 U.S. Dist. LEXIS 55387 at *7 (S.D.N.Y. July 22, 2008)); See also *D'Angelo-Fenton v. Town of Carmel*, 470 F. Supp. 2d 387, 401 (S.D.N.Y. 2007). Thus, "Broad and conclusory terms... are insufficient to fulfill this element." *Id.*

In its amended complaint, the City pleads an injury based on a hypothetical tax loss caused by cigarette sales on Indian county; the closest of which is approximately 60 miles from the City's tax jurisdiction. See Amended Complaint at ¶¶ 51, 58. The plaintiff did not plead a specific dollar amount for damages nor has it articulated how such amount could be calculated accurately[6]. More significantly, the City has failed to plead a legitimate causal connection of defendants' *lawful* actions to its hypothetical injury. In light of these circumstances, plaintiff's request for monetary damages should be denied because the City has not pleaded special damages with the particularity required by Fed. R. Civ. P. 9(g).

Similarly, the City's request for civil penalties under the CCTA should also be denied. The Court's imposition of penalties under the CCTA against the defendants in this case would be inconsistent with notions of justice. The CCTA permits the imposition for civil penalties. See 18 USCS § 2346(b)(2). However, the CCTA does not impose a statutory range for civil penalties and does not enumerate particular factors that the Court is to consider. Without a

---

[6]     In the affidavit of Jason Jerome, dated November 26, 2008, Mr. Jerome states that the City received "$921,451.00 in restitution, which was based on a New York State Excise Tax of $15.00 per carton of cigarettes." In light of that money already paid and received by the City, any damages calculation that does not subtract that number out is inherently inaccurate, and further leads to a finding that there remain significant issues of material fact with respect to the City's damages formula.

statutory range, Pennisi could not be put on notice that it would be potentially liable for conduct that the State expressly authorized. *See Advisory Opinion.*

Nevertheless, civil penalties would be entirely inappropriate in this case.  In determining whether a civil penalty is appropriate, Courts may consider several equitable factors including "(1) the egregiousness of the defendant's conduct; (2) the degree of the defendant's scienter; (3) whether the defendant's conduct created substantial losses or the risk of substantial losses to other persons; (4) whether the defendant's conduct was isolated or recurring; and (5) whether the penalty should be reduced due to the defendant's demonstrated current and future financial condition." *Securities and Exchange Commission v. Opulentica,* 479 F.Supp.2d 319, 331 (S.D.N.Y. 2007).  "Courts have also considered whether the defendant has cooperated with authorities." See e.g.  *SEC v. Church Extension of the Church of God, Inc.,* 429 F.Supp.2d 1045, 1050 (S.D. Ind. 2005); *SEC v. Sargent,* 329 F.3d 34, 42 (1st Cir. 2003). "While these factors are helpful in characterizing a particular defendant's actions, the civil penalty framework is of a 'discretionary nature' and each case 'has its own particular facts and circumstances which determine the appropriate penalty to be imposed.'" *Opulentica.* 479 F.Supp.2d at 331 (quoting *SEC v. Moran,* 944 F.Supp. 286, 296-97).

Under these guidelines, the Court's imposition of civil penalties would be a gross miscarriage of justice against Pennisi which has consistently followed the law, and which sought the advice of the DTF when this case was commenced.  It is further indisputable that the State of New York expressly permitted wholesalers to sell unstamped cigarettes to Indian retailers, pending the enactment of legislation that provided for an enforceable tax collection mechanism for cigarettes sold on Indian country.  *See Advisory Opinion.*  Moreover, Pennisi consistently complied with State law by regularly filing its Form CG-6 and accompanying documents with

15

the DTF, thus notifying the State as to the precise number of unstamped cigarettes it was providing to its Indian customers.

Pennisi's lawful sales of unstamped cigarettes did not create substantial losses or the risk of substantial losses to anyone, including the City of New York, who to this day cannot quantify an injury. Indeed, if such loss was substantial, the City would have proffered evidence of the enormous tax windfall it is accruing by virtue of the Amended Tax Laws.

The fact that the City had to invent a penalty calculation is also problematic. Pennisi does not believe that Congress intended the CCTA to empower municipalities to sue licensed agents of the State for civil penalties in the tens of millions of dollars, and for an order disgorging profits[7] as if the City and Pennisi were business partners.

Finally, Pennisi demonstrated its good faith desire to comply with New York law when it immediately stopped selling unstamped cigarettes at the direction of the DTF once the Tax Law Amendments became enforceable. Such conduct demonstrates that Pennisi is a law abiding company.

In light of these circumstances, the City's claims for damages and civil penalties should be denied.

### c. The City's Theory of Liability Under the CCTA and CMSA is Patently Flawed

The City's theory of liability under the CCTA and CMSA are patently flawed and create issues of material fact. For instance, the City asks the Court to find that unstamped cigarettes are "contraband" within the meaning of the CCTA at the precise moment that such cigarettes leave the defendants' possession, and therefore the defendants' are liable under the CCTA for

---

[7]         Notably, the City did not plead that it was seeking relief in the form of an order disgorging defendants' profits. Accordingly, Pennisi does not believe it necessary address the City's newest theory of punishment despite the obvious factual issues it projects.

16

engaging in transactions of "contraband" cigarettes. *See* City's Memo at 24.  This reasoning misinterprets the language of the CCTA.

The CCTA clearly states that "it shall be unlawful for any person knowingly to ship, transport, receive, possess, sell, distribute or purchase contraband cigarettes or contraband smokeless tobacco." 18 U.S.C. § 2342(a).  By asking the Court to infer that "engaging in transactions" is somehow implicit in the prohibited conducted enumerated in the CCTA would be asking the Court to supplement the very language of the CCTA.  Suffice it to say, if Congress wanted to prohibit state agents like Pennisi from "engaging in transactions" with cigarettes which may eventually become "contraband" under the CCTA, it would have included the necessary language.  Moreover, Congress also would not have included the specific exemptions for State licensed wholesalers such as Pennisi.  *See* 18 U.S.C. § 2341(2)(C) (Where the CCTA expressly provides that unstamped cigarettes in the possession of State licensed persons are not "contraband cigarettes").

Furthermore, the City's reliance on the decision in *City v. Golden Feather,* 2009 U.S. Dist. LEXIS 76306 (E.D.N.Y. Aug. 25, 2009), is misconstrued and disharmonious with the Court of Appeals decision in *Cayuga. See* City's Memo at 32.  In *Cayuga,* the Court of Appeals found that unstamped cigarettes become taxable at the point when those cigarettes are sold to a non-exempt (non-Indian) individuals.  *See Cayuga* at 643-644.  (Where the Court held that Indian retailers cannot be criminally liable for failing to collect the State's cigarette excise tax absent a tax collection methodology in place by the State); *See Id.* at 647 (The ultimate obligation to pay cigarette sales taxes rests on the consumer...).  Accordingly, *Cayuga* clearly acknowledges that Indian retailers had a right to possess and sell unstamped cigarettes to non-

17

Indians without violating New York tax law; and that it was the non-Indian consumer who was ultimately liable for remitting the State's cigarette tax.

In contrast, *Golden Feather* found that Indian retailers cannot defeat CCTA liability for possessing "mass quantities of untaxed cigarettes *intended* for resale to non-Tribe members…" *Golden Feather*, 2009 U.S. Dist. LEXIS 76306 at *104 (*emphasis added*), thus requiring a specific intent on the part of the retailer. This is markedly different from Pennisi's circumstances where the law clearly permitted it to supply unstamped cigarettes to Indian retailers. Accordingly, because Indian retailers were lawfully permitted to purchase and possess unstamped cigarettes without those cigarettes falling within the definition of "contraband" under the CCTA, wholesalers were naturally permitted to sell unstamped cigarettes to its Indian customers without incurring the same liability. To find otherwise, would be imputing the specific intent of the Indian retailer (to sell "mass quantities" of cigarettes to non-Indians in violation of the CCTA) into that of the wholesaler[8].

The City has also failed to demonstrate how Pennisi had the requisite "knowingly" state of mind that the allegedly "contraband cigarettes" were in fact contraband under the CCTA. "[C]ourts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word "knowingly" as applying that word to each element." *Flores-Figueroa v. United States*, 556 U.S. 646, 859 (2009). In that case, the Supreme Court was asked to resolve whether the scienter "knowingly" was applicable to the direct object of the statute which made it a violation if a person "'*knowingly*' transfers, possesses, or uses, without lawful authority, *a means of identification of another person.*" 18 U.S.C. § 1028A(a)(1) (*emphasis added*). The Supreme Court held that, consistent with regular English usage, the word "knowingly" applied to each

---

[8]     The City's theory is conspicuously similar to its aiding and abetting theory which was expressly rejected by the Court. *See City of New York v. Milhelm Attea & Bros., Inc.*, 2009 WL 701005, at *2.

element of the statute and therefore the State was required to prove that the defendant "*knew* that the 'means of identification' he or she unlawfully transferred, possessed, or used, in fact, belonged to 'another person.'" *Flores-Figueroa*, 556 U.S. at 856.

Consistent with the Supreme Court's holding in *Flores-Figueroa*, the City must show that Pennisi *knew* that the unstamped cigarettes were "contraband" within the meaning of the CCTA[9]. Such conclusion, however, would be inconsistent with the facts evident on the record. Contrary to the City's protestations, Pennisi does not believe (and therefore cannot know) that any of the unstamped cigarettes he possessed or sold to Indian retailers were in fact "contraband" as defined in the CCTA. Pennisi's good faith belief that such unstamped cigarettes were non-contraband was derived from the DTF Advisory Opinion, the case *Cayuga Indian Nation of New York v. Gould*, 14 N.Y.3d 614 (2010), and the fact that its wholesaler and stamping agent licenses were at all times in good standing.

In any event, whether Pennisi knew that the alleged contraband cigarettes were in fact contraband is an unresolved issue of material fact. And because it is well established that all inferences relating to issues of material fact are to be resolved in favor of the non-movant, *Scott* 550 U.S. at 380, the City's motion for summary judgment on the CCTA claims should be denied.

Similar to the CCTA, the CMSA also requires that City prove a mental state. Under the CMSA, it is unlawful for

---

[9]    Notably, in the decision *U.S. v. Morrison*, 706 F. Supp. 2d 304 (E.D.N.Y. 2010), Senior Judge Hurley overturned a prior RICO conviction that found the defendant guilty of conspiracy, with the goal to violate N.Y. Tax Law § 471 and the CCTA through sales of unstamped cigarettes. The Court overturned that jury conviction in consideration of the Second Circuit's decision in *City of New York v. Golden Feather Smoke Shop*, Inc., 597 F.3d 115 (2010), reasoning that the Second Circuit's certification of questions as to the interpretation of § 471 to the N.Y. Court of Appeals evinced that the language of § 471 was not sufficiently clear to sustain a conviction under the CCTA in consideration of Due Process. In doing so, the Court impliedly confirmed that liability under the CCTA was conditioned on whether an individual had the requisite knowledge as to whether New York tax law required that cigarettes sold from Indian Country necessarily bear tax stamps (i.e., Contraband). Under parallel reasoning, Pennisi would have had to *know* that the unstamped cigarettes sold to its Indian customers were in fact contraband in order to be liable under the CCTA.

19

> any agent, wholesale dealer or retail dealer, with the *intent to injure* competitors
> or destroy or substantially lessen competition, or with *intent to avoid the
> collection or payment over of such taxes as may be required by law*, to advertise,
> offer to sell, or sell cigarettes at less than the cost of such agent wholesale dealer
> or retail dealer, as the case maybe. N.Y. Tax. L. § 484(a) (McKinney's 2009).

No such "intent" can be distilled from the record in this case. To the contrary, Pennisi's reliance

on the Advisory Opinion, in conjunction with the fact that it stopped selling unstamped cigarettes

to its Indian Customers at the DTF's direction in June 2010, is evident of its desire to follow the

law—and should not be construed as "intent to avoid the collection" of New York State cigarette

taxes. Accordingly, the City's claims under the CMSA also fail as there are still significant

issues as to whether Pennisi had the requisite scienter to be culpable under the CMSA.

## V.     CONCLUSION

Based on the foregoing, the defendant Mauro Pennisi, Inc. respectfully requests that the

Court deny plaintiff's motion for summary judgment and grant defendants' motions for summary

judgment thus dismissing this case.

Respectfully submitted,

James F. Simermeyer

20