UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

THE CITY OF NEW YORK,

                                                          Plaintiff,

-against-                                            Civil Action No. 06-CV-3620
                                                                           (CBA)(ALC)

MILHELM ATTEA & BROS., INC., DAY
WHOLESALE, INC., GUTLOVE & SHIRVINT, INC.,
MAURO PENNISI, INC., JACOB KERN & SONS,
INC., WINDWARD TOBACCO, INC. and CAPITAL
CANDY COMPANY, INC.

                                                          Defendants.

---

# MEMORANDUM OF LAW IN RESPONSE TO
# PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

                                                    **Margaret A. Murphy, Esq.** (MM2990)
                                                    Attorney for Defendant Day Wholesale, Inc.
                                                    5354 Briercliff Drive
                                                    Hamburg, New York  14075
                                                    Telephone No.  (716) 649-1004

Dated:  January 23, 2012

**COURTESY COPY – ORIGINAL TO BE FILED BY ECF**

**PRELIMINARY STATEMENT**

Plaintiff City of New York ("the City") now renews its prior motion for summary judgment. In support of its current motion, the City submits the 1988 affidavits[1] filed in support of its prior summary judgment motion. In addition, the City provides proof that Defendant Day Wholesale, Inc. ("Day") and the other remaining defendants continued to sell unstamped cigarettes to reservation cigarette sellers until June 21, 2011. The City's remaining evidentiary proof relates to the issue of damages, civil penalties and attorney fees.

On June 21, 2011, the New York State Department of Taxation and Finance ("Tax Department") issued a technical bulletin, advising its agents of the implementation of a coupon and prior approval system, as authorized by the enactment of Chapter 134, Part D of the 2010 Session Laws of New York ("Part D"). (*See* Second Supplemental Affidavit of Peter Day, dated

---

[1] The City has submitted seven affidavits previously served in 1988. (*See* Docket Entry #182). Five of these affidavits relate to sales on the Poospatuck Reservation. Those 1988 affidavits include the affidavit of Christopher M. Lannon, dated August 6, 2008, the affidavit of Tracey Young, dated August 11, 2008, the affidavit of Bryon Mars, dated October 14, 2008, a redacted affidavit of a confidential informant, dated October 24, 2008, and the affidavit of Jason Jerome, dated November 26, 2008. The City does not allege Day sold unstamped cigarettes on the Poospatuck Reservation. Consequently, these five affidavits provide no evidentiary proof against Day.

The City has also submitted the affidavit of Thomas R. Frieden, Commissioner of the New York City Department of Health and Mental Hygiene. In the affidavit, prepared for the *Golden Feather* case, Frieden points to a 2007 telephone survey showing 59,000 City residents purchased unstamped cigarettes directly from Indian reservations or on the street. The affidavit provides no evidence that unstamped cigarettes supplied by Day are sold to City residents.

The affidavit of Julio Monell, dated November 14, 2008 ["Monell Aff."], is the single piece of evidence to show City residents purchased unstamped cigarettes from a reservation seller allegedly supplied by Day. However, this affidavit provides no direct evidence such cigarettes were supplied by Day. (*See* Second Supplemental Affidavit of Peter Day, dated January 23, 2012 ["Day 2d Supp. Aff.], ¶¶ 29-33).

Mr. Monell states he purchased unstamped cigarettes over the Internet from two companies, Smartsmoker.com and OrderSmokesDirect.com. (Monell Aff. ¶¶ 2). These retail companies are owned by Scott Maybee. Day, however, never provided unstamped cigarettes to these companies. (Day 2d Supp. Aff. ¶ 32), Day admits to selling unstamped cigarettes to U.S. Tobacco Wholesale, a wholesale company owned by Mr. Maybee. (*Id.*). But Day was not the only supplier of unstamped cigarettes to U.S. Tobacco Wholesale. (*Id. ¶* 29). The City also claims Attea, Gutlove and Windward supplied unstamped cigarettes to U.S. Tobacco Wholesale. (Declaration of Eric Proshansky, dated December 23, 2011 ["Proshansky Decl.], ¶31). Day has no knowledge whether unstamped cigarettes supplied to U.S. Tobacco Wholesale by Day were sold to City residents by one of Mr. Maybee's retail companies. (Day 2d Supp. Aff. ¶ 33).

January 23, 2012 [*Day 2d Supp. Aff.*], Exhibit H). In this bulletin, agents are directed *for the first time* "to collect the cigarette excise tax and prepaid sales tax on all cigarettes sold for resale on an Indian reservation to non-Indians and non-members of an Indian nation or tribe." (*Id.*) Additionally, agents are required to stamp all cigarettes sold "to Indian nations and tribes and reservation cigarette sellers," but not to collect taxes "to the extent Indian tax exemption coupons are provided or to the extent prior approval is received from the Tax Department." (*Id.*). Since the bulletin's issuance, Day has sold only stamped cigarettes to its wholesale customers. (*See Day 2d Supp. Aff.* ¶ 28; Declaration of Eric Proshansky, dated December 23, 2011 ["*Proshansky Decl.*"], Exhibit 19 at TAX009055-009159). In its summary judgment motion, the City seeks a finding of liability for Day's conduct prior to June 21, 2011.

In *Cayuga Indian Nation v. Gould*, 14 N.Y.3d 614, 651 (2010), *cert. denied* 2010 WL3207691 (U.S. Oct. 4, 2010), the New York Court of Appeals stated:

> Even outside the context of Indian relations, taxpayers are not ordinarily required to guess what they need to do to comply with the Tax Law. It is generally up to the Legislature and the Department to articulate – *before a transaction occurs* – in *what circumstances a tax is owed*, how it should be calculated and *when and how it must be paid*. (Emphasis added)

New York Tax Law § 471 states:

> There is hereby imposed and shall be paid a tax on all cigarettes possessed in the state by any person for sale, except that no tax shall be imposed on cigarettes sold under such circumstances that this state is without power to impose such tax . . . .

"[T]his State is without power to impose such tax" on "sales to qualified Indians for their own use and consumption on their nations' or tribes' qualified reservation." N.Y. Tax Law § 471, as amended by Part D; *Department of Taxation and Finance of New York v. Milhelm Attea & Bros., Inc.* ("*Attea*"), 512 U.S. 61, 64 (1994). Prior to June 21, 2011, "no enforceable statutory or regulatory scheme" existed to guide agents, before making a wholesale transaction with a

2

reservation seller, what cigarettes should be taxed or untaxed.  *Cayuga,* 14 N.Y.3d at 629 (findings made prior to Part D's implementation); *Day 2d Supp. Aff.* ¶ 15-22 (listing the injunctions and stays delaying Part D's implementation).  Consequently, "there [was] no way for "Indian retailers (or anyone else) to know what the State-sanctioned inventory 'allotment' is (how to acquire it) – and, therefore, how many unstamped cigarettes a [reservation] retailer may lawfully" purchase from an agent.  *Cayuga,* 14 N.Y.3d at 651.

Despite the *Cayuga* holding, the City has consistently argued, throughout this litigation, Day and other defendants have violated the CCTA and CMSA by supplying unstamped cigarettes for non-tax exempt reservation sales.   The City asserts New York Tax Law § 471 ("§ 471), standing alone, requires state stamping agents to collect state cigarette taxes by affixing tax stamps on cigarettes sold to non-exempt consumers on Indian reservations.  A similar view was adopted by the trial judge, one Appellate Division justice, and three Court of Appeals judges in the *Cayuga* case.  *Id.* at 632  (relating to ruling by the trial judge); *id.* at 633 (relating to the single dissenter in the Appellate Division); *id.* at 656 (the minority view in *Cayuga*).  Nevertheless, these views were rejected by the Court's majority in *Cayuga.*

In this Memorandum, Day will not rehash legal issues already addressed and discussed in its two prior memoranda submitted in support of its summary judgment motion. (*See* Docket Entries # 293, #294-2).  In Rebuttal Point I, Day will instead address those misperceptions as to the *Cayuga* holding raised in the City's current motion papers.  In Rebuttal Point II, Day will rebut the City's assertions relating to its public nuisance claim.  Finally, in Rebuttal Point III, Day will briefly address the issue of damages, civil penalties, and attorney fees.

**UNDISPUTED EVIDENTIARY PROOF**

As of this date, only three defendants remain in this action: Day, Gutlove & Shirvint, Inc. ("Gutlove") and Mauro Pennisi, Inc. ("Pennisi"). The City's evidence against Day, however, stands in sharp contrast to the evidence against Gutlove and Pennisi.

The following facts distinguish Day from the remaining defendants: Day is an Indian trader licensed by the United States Department of Interior, Bureau of Indian Affairs. (*Id.* at 18). During the time frame applicable to this case, Day never sold unstamped cigarettes to reservation cigarette sellers on Long Island. (*Id.* ¶ 20; *Proshansky Decl.,* Exhibits 19-20; Docket Entry # 252). Day has no knowledge whether unstamped cigarettes supplied to its customers were ever sold to City residents. (*Day 2d Supp. Aff.* ¶33). Damages are being sought against Gutlove and Pennisi and not against Day. (Memorandum of Law of Plaintiff City of New York, dated December 23, 2011 ("*City MOL*") at 2.

The following facts distinguish Day from Gutlove: Day continues to possess a state stamping license. (*Day Aff. I* ¶¶ 7-8; *Proshansky Dec.* ¶12). Day Wholesale has never ***knowingly*** sold unstamped cigarettes to reservation sellers involved in off-reservation sales of unstamped cigarettes (i.e. bootlegging). (*Day Aff.* ¶ 43; Affidavit of Christopher M. Lannon, dated August 6, 2008, ¶4-7, Affidavit of Tracey Young, dated August 11, 2008, ¶¶ 3-10). Phillip Morris has not terminated its direct-buying agreement with Day and continues to supply Day with unstamped cigarettes. (*Compare Proshansky Decl.,* Exhibit 19 *with Proshansky Decl,* Exhibits 2; *Proshansky Decl.,* Exhibit 9).

One common fact exists among all remaining defendants: Prior to June 21, 2011, defendants sold unstamped cigarettes to reservation sellers who resold these cigarettes on Indian

reservation to tribal and non-tribal members without collecting state cigarette taxes. This is the only evidentiary fact upon which the City seeks a finding of liability against Day.

## ARGUMENT

## REBUTTAL POINT I

### PRIOR TO JUNE 21, 2011, THERE EXISTED NO APPROPRIATE MECHANISM FOR THE COLLECTION OF STATE CIGARETTE TAXES ON INDIAN RESERVATIONS

The City contends "the Court of Appeals [in *Cayuga*] accepted the principle advanced by this Court that § 471 standing alone imposes a tax on cigarettes sold on reservation to non-Indians." (*City MOL* at 3). Day has never disputed § 471 imposes a tax on non-exempt consumers who purchase cigarettes anywhere within the State.

> The issue here is not whether Tax Law § 471(1) "imposes" a [cigarette] tax . . . . Rather, the question is how the tax is to be assessed and collected in the unique retail context presented here and from whom.

*Cayuga*, 14 N.Y.3d at 647.

In its prior memoranda[2], Day argues "no enforceable statutory or regulatory scheme specifically addressing the calculation or collection of taxes from on-reservation retail sales of cigarettes" existed prior to June 21, 2011. *Id.* at 629. "[A]lthough Tax Law § 471 certainly "imposes" a cigarette sales tax," the Court of Appeals concluded:

> the Cayuga Nation is entitled to a declaration that the absence of an appropriate legislative or regulatory scheme governing the calculation and collection of cigarette sales taxes that distinguishes between federally exempt retail sales to Indians occurring on a "qualified reservation" and non-exempt sales to other consumers precludes reliance on Tax Law § 471 as the sole basis to sanction Nation retailers for alleged noncompliance with the New York Tax Law.

---

[2] *See* pages 5-16 of Day's memorandum in support, dated November 4, 2010 (Docket Entry #293) and pages 4-6 of Day's memorandum in reply, dated November 30, 2010 (Docket Entry #294-2).

5

*Id.* at 653. The absence of a methodology distinguishing taxable and tax-exempt sales is just as relevant, if not more, at the wholesale stage as it would be at the retail stage. Indian retailers should know whether a consumer is a tax-exempt tribal member or non-exempt, non-tribal member. However, a state licensed agent/wholesaler has no way to know whether cigarettes will ultimately be sold at retail to tax-exempt or non-exempt consumers. Consequently, the *Cayuga* holding is equally applicable to the facts alleged against Day.

In the City's view, if Day and other agents, prior to June 21, 2011, "were unable to distinguish tax-exempt from taxed sales, they were not permitted to make any sales of unstamped cigarettes." (*City MOL* at 33). This argument ignores two points of law.

First, the State has "limited on-reservation taxing authority." *Oneida Nation of New York v. Cuomo,* 645 F.3d 154, 158 (2d Cir. 2011). The State has the authority to collect state cigarette taxes on reservation sales to non-exempt, non-tribal members. *Id.* (quoting *Dep't of Tax'n & Fin. v. Milhelm Attea & Bros.*, 512 U.S. 61, 64 (1994)). In exercising this limited authority, the State may impose on Indian traders, such as Day, and reservation cigarette sellers a minimal burden "reasonably tailored for the collection of valid taxes from non-Indians." *Attea*, 512 U.S. 61, 72 (1994).

Second, the State has the "obligation to make available to tribal members a tax-free quantity of cigarettes sufficient to 'satisfy the legitimate demands of those reservation Indians who smoke[.]'" *Oneida,* 645 F.3d at 170 (quoting *Attea,* 512 U.S. at 69). If, as the City suggests, Day and other Indian traders were precluded from selling any untaxed cigarettes, reservation sellers would be denied sufficient quantities of tax-free cigarettes to satisfy the legitimate demand of tax-exempt Indian consumers.

6

After the Court of Appeals rendered the *Cayuga* decision, the Legislature responded by enacting Part D with the dual purpose of collecting taxes from non-exempt, non-tribal members while simultaneously exempting from such taxes sales to tribal members. *Id. Accord Day Wholesale, Inc. v. State*, 51 A.D.3d 383, 387 (4th Dept. 2008) (holding the Legislature enacted New York Tax Law § 471-e "to create a procedure that would permit the State to collect cigarette taxes on reservation sales to non-Indians and non-members of the nation or tribe while simultaneously exempting from such tax, reservation sales to qualified Indian purchasers."). Due to litigation in federal and state courts, the State delayed Part D's implementation until June 21, 2011. Consequently, prior to June 21, 2011, there existed no enforceable statutory or legislative scheme for the collection and assessment of taxes on Indian reservations.

Claiming "the entire rationale for *Cayuga's* outcome" is based on principles of tribal sovereignty, the City urges this Court to limit the *Cayuga* holding to tribal retailers only. (*City MOL* at 3, 30-35). This unsupported argument must be rejected by the Court.

The Court of Appeals specifically stated the *Sherrill* decision "certainly would preclude the Cayuga Nation from attempting to assert sovereign power over its convenience store properties." *Cayuga*, 14 N.Y.3d at 642 (referring to *City of Sherrill v. Oneida Indian Nation,* 544 U.S. 197 (2005).

> [The Cayuga] Nation does not suggest that its reacquisition of the convenience store parcels revives its ability to exert full sovereign authority over the property. Rather than seeking immunity from state tax laws, it is actually relying on state tax laws; the Nation contends that, under the plain language of Tax Law § 470(16)(a), the property it reacquired constitutes "qualified reservation" property.

*Id.* at 641. In reviewing the *Cayuga* decision, the Court of Appeals never found the Cayuga Nation could not be prosecuted due to tribal sovereignty. Instead, the Court concluded the

7

absence of an appropriate legislative or regulatory scheme distinguishing tax-exempt sales from taxable sales "preclude[d] reliance on Tax Law § 471 as the sole basis to sanction Nation retailers for alleged noncompliance with the New York Tax Law." *Id.* at 653.

Next, the City claims *Cayuga* does not shield Day because the decision explicitly excludes bulk sales intended for non-exempt resale. (*City MOL* at 35-39). The City equates bulk sales of untaxed cigarettes supplied to bootleggers for off-reservation sales to non-exempt consumers *with* bulk sales of untaxed cigarettes supplied by Day to reservation sellers for on-reservation sales to non-exempt consumers. In *Cayuga*, however, the Court distinguished "on-reservation retail sales of cigarettes to [exempt and non-exempt] consumers for their personal use" from "large-scale cigarette bootlegging activities" by Indians who "engage in the wholesale distribution of untaxed cigarettes destined for off-reservation sales" to consumers. The Court concluded "*Kaid* and the other federal cigarette bootlegging cases cited by [the *Cayuga* defendants and the City in this case] are distinguishable as they do not raise the same issue concerning collection of sales taxes from Indian retailers based on sales to individual consumers as presented in this case." *Id.* at 653, citing *United States v. Kaid,* 241 Fed. Appx. 747 (2d Cir. 2007); *City of New York v. Golden Feather Smoke Shop, Inc.* 2009 WL 705815 (E.D.N.Y. 2009), *question certified to N.Y. Ct. App.* 597 F.3d 115 (2d Cir. 2010); *United States v. Morrison,* 596 F. Supp.2d 661 (E.D.N.Y. 2009). In this case, the City has presented no evidence that Day or any Day customer engaged in bulk sales to supply bootleggers with untaxed cigarettes for off-reservation sale to individual consumers.

Finally, the City contends "Defendants' reliance on judicial stays as a safe harbor from CCTA and CMSA liability is no different than their previously rejected reliance on the

8

discredited defense of 'forbearance.'" (*City MOL* at 4). Again, *Cayuga* provides the Court with the authority to reject this contention.

Due its policy of forbearance, the Tax Department did not take the necessary steps to implement the provisions of § 471-e.

> The preliminary injunction issued in *Day* has not been disturbed and the parties in this case agree that Tax Law § 471-e is not "in effect" and therefore remains unenforceable. Thus, at present, there is no enforceable statutory or regulatory scheme specifically addressing the calculation or collection of taxes arising from the on-reservation retail sale of cigarettes. Moreover, the Department- the agency charged by the Legislature with the collection of the taxes-has not to date implemented a system that uses Indian retailers as an intermediary for collection of cigarettes sales taxes from consumers.

*Cayuga,* 14 N.Y.3d at 629. The preliminary injunction issued in *Day Wholesale* precluded the Court of Appeals from finding there existed an enforceable legislative scheme in place. Similarly, the state and federal injunctions and stays preclude this Court from finding an enforceable statutory or regulatory scheme distinguishing tax-exempt sales from non-exempt sales existed prior to June 21, 2011. Consequently, the City cannot state a cause of action against Day based on the sale of unstamped cigarettes prior to implementation of a statutory or regulatory scheme setting forth the methodology for calculating and collecting taxes on sales made to non-exempt consumers on Indian reservations.

### REBUTTAL POINT II

### THE CITY HAS NO PRIVATE CAUSE OF ACTION FOR A PUBLIC NUISANCE BASED ON COMMON LAW OR ON PUBLIC HEALTH LAW § 1399-LL

The City claims "the factual distinctions between the present allegations and those in [*City of New York v. Smoke-Spirits.com, Inc.,* 12 N.Y.3d 616 (2009),] . . . establish that *Smokes-Spirits,* far from serving as a basis for dismissal, supports the City's public nuisance cause of

9

action." (*City MOL* at 54). To support its assertions, the City quotes a footnote in which the New York Court of Appeals acknowledges "a different result *might* be reached if the City's complaint alleged that ***defendants had made unauthorized shipments to minors.***" *Id.* at 629 fn 5 (emphasis added), *citing City of New York v. Milhelm Attea & Bros., Inc.*["*Attea I*"], 550 F. Supp. 332, 349-350 (2008).

In its Amended Complaint, the City claimed:

> Sellers of unstamped cigarettes are also major suppliers of cigarettes to underage smokers. Such sellers rarely, if ever, comply with N.Y. Public Health L. §§ 1399-cc(3) or 1399-ll, which require proof-of age and prohibit non-face to face (i.e. remote) cigarette sales."

(Docket Entry 46 ¶6). The City further argues its public nuisance claim is not based primarily upon alleged tax evasion, but upon an injury to the public health caused by the sale of untaxed cigarettes supplied by defendants. Based on these bare allegations, the City asserts Day is not entitled to summary judgment. The City's claim lacks merit for two reasons.

First, the City never alleged in its Amended Complaint or submitted evidentiary proof that either Day or its reservation customers ever sold untaxed cigarettes to minors. Second, the City has failed to establish that untaxed supplied by Day ever reached a "considerable number" of City residents.

In *Attea I*, this Court found "the City has adequately pled that the health of its residents may be endangered by the re-sale of cigarettes over the Internet, by mail, or by telephone." 550 F. Supp. at 351.

> Although the City may ultimately be unable to establish [the] elements [for a public nuisance], its allegations are adequate to sustain its claim for the purposes of a motion pursuant to Rule 12(b)(6). . . .
> New York case law also suggests that an inquiry into causation may be appropriate when the alleged connection between

10

> the actions of the defendant and the resulting harm may be too attenuated to support a finding of liability. (Citation omitted).
> 
> As an initial matter, defendants do not appear to challenge the City's allegations of factual causation . . . . To the extent that defendants do challenge causation, the Court finds that the City's allegations are sufficient to support a finding that defendants' conduct factually and proximately caused the City's injury.

*Id.*

Even the City acknowledges it has failed to set forth sufficient evidentiary proof to sustain its public nuisance claim. (*City MOL* at 56, fn. 39) ("Neither defendants nor the City are entitled to summary judgment on the public nuisance claim, because of outstanding issues of fact." Although defendants are not entitled to dismissal of the claim as a matter of law, the City does not intend to prove up its public nuisance claim assuming summary judgment is granted on the CCTA or CMSA claims and would withdraw the public nuisance in that event."). Although the City claims Day is not entitled to summary judgment due to "outstanding issues of fact," it has failed to state what those issues are.

There is no disputed material fact precluding the dismissal of the City's public nuisance claims against Day. Day has shown it does not sell unstamped cigarettes to Indian reservations in close proximity to City residents. (*Day Aff.* ¶ 20; Docket Entry # 244-4, Affirmation of Margaret A. Murphy, dated November 3, 2010 [*Murphy Aff."*] ¶J at a-6; *Proshansky Decl.* ¶¶ 23-25,* Exhibits 19-20). Day does not sell to reservation cigarette sellers who sell large quantities of untaxed cigarettes to non-exempt persons for off-reservation resale. (*Day Aff.* ¶ 43). More importantly, the City has failed to present any evidence that unstamped cigarettes supplied by Day are resold to a considerable number of City residents or to any minor within the State. (*Day 2d Supp. Aff.* ¶¶35-37). Consequently, the City has failed to prove Day's conduct has caused any injury to the City.

**REBUTTAL POINT III**

**THE CITY HAS SHOWN NO INJURY-IN-FACT CAUSED BY DAY TO WARRANT AN AWARD OF DAMAGES, CIVIL PENALTIES OR ATTORNEY FEES**

After reviewing the relevant evidence and applicable laws, the Court will have no reason to address the City's request for damages, civil penalties or attorney fees. On the other hand, if the Court finds liability against Day, the Court would have to consider the City's request for such remedies.

In its Amended Complaint, the City sought injunctive relief and an "[a]ward [in] the amount of City excise and sales taxes as a result of defendants' violation of 19 U.S.C. § 2341 *et seq.* and N.Y. Tax L. § 483 *et seq.* in addition to the attorney's fees and costs incurred in bringing this action . . . ." (*See* Docket Entry #46 at 14). The City has presented no evidence unstamped cigarettes supplied by Day were sold to City residents. The City's alleged injury stems from lost sales for New York City vendors who are obligated to pay City excise and sales taxes and injury of the public health of City residents who might otherwise quit smoking if they were forced to pay both State and City cigarette taxes. The City, however, has failed to show an injury-in-fact from Day's alleged unlawful conduct. Consequently, as noted in its memorandum, the City cannot and has not sought damages against Day. (*City MOL* at 2, 58-61).

Although the City did not specifically request civil penalties in its prayer for relief, the Court has the discretion to "[a]ward such other and further relief as [it] may deem appropriate." (*See* Docket Entry #46 at 15). In enacting the CCTA, Congress left it to the Court's sound discretion to determine the amount to be awarded in ***civil*** penalties. 18 U.S.C. § 2346(b)(2). Congress, however, could not delegate the authority to make any award against a defendant over whom there exists no Article III standing. Without proof of an injury-in-fact, however, the Court must reconsider its prior ruling finding the City has standing under Article III of the United

States Constitution to begin this action against Day. *See City of New York v. Milhelm Attea & Bros., Inc.*, 550 F. Supp.2d 332, 340-41 (E.D.N.Y. 2008).

Finally, the City requests an award of attorney fees pursuant to the CMSA. N.Y. Tax Law § 484(b). This provision would permit "reasonable" attorney fees relating to its CMSA claim alone. Although the City claims its "attorneys spent 3,013.6 hours in prosecuting this matter," (*City MOL* at 80-81), the City has not broken down the number of hours associated with its CMSA claim. (*Proshansky Decl.*, Exhibit 19). More importantly, the City has failed to give sufficient details relating to these hours for the Court to determine whether such hours were "reasonable." Finally, as noted in § 484(b), an application for attorney fees must be filed in state supreme court.

## CONCLUSION

For the reasons stated above, Defendant Day Wholesale, Inc. respectfully requests an Order granting its motion for summary judgment, dismissing the City's Amended Complaint and denying the City's cross-motion for summary judgment.

Dated:     Lakeland, Florida
           January 23, 2012

By ___*Margaret A. Murphy*___
MARGARET A. MURPHY, ESQ.
Attorney for Defendant Day Wholesale, Inc.
5354 Briercliff Drive
Hamburg, New York 14075
Telephone: (716) 649-1004

13