

MICHAEL A. CARDOZO
*Corporation Counsel*

THE CITY OF NEW YORK
**LAW DEPARTMENT**
100 CHURCH STREET
NEW YORK, N.Y. 10007-2601

Aaron M. Bloom
*Assistant Corporation Counsel*
Telephone: (212) 356-2274
Facsimile: (212) 356-2038
abloom@law.nyc.gov

April 24, 2013

**By ECF and First Class Mail**
Honorable Carol B. Amon
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201-1818

    Re:   *The City of New York v. Milhelm Attea & Bros., Inc.* et al., 06 Civ. 3620 (CBA)

Dear Judge Amon:

    I write on behalf of the City of New York (the "City") to confirm the procedure and scope of the penalty hearing and to address the issues raised at the April 16, 2013 pre-hearing conference and identified in the Court's April 17, 2013 Order (Pacer Doc. 415): (1) the admissibility of affidavits submitted by the City on summary judgment; (2) the admissibility of the City's proposed Exhibit 48 – the verified complaint in *Jonathan Smith v. Vincent Federico*; and (3) outstanding discovery disputes with Mauro Pennisi, Inc. ("Pennisi").

    **Hearing Procedure and Scope** - The City notes that in the Court's Memorandum and Order dated August 17, 2012, the Court held that "an award of civil penalties to the City is appropriate as against Gutlove and Pennisi;" further held that "using the [City's] PACT Act calculations as a starting point for an award of civil penalties is appropriate;" and set down the issue of the exact penalty to be assessed against the defendants for a hearing, describing the purpose of the hearing as follows:

> The defendants Gutlove and Pennisi have submitted little evidence to controvert the City's submissions. They argue, however, that they are entitled to an evidentiary hearing prior to any award of civil penalties. Although it is not entirely clear what showing they intend to make or what evidence of the City's they seek to challenge, the Court nonetheless concludes that the defendants should be afforded an opportunity to be heard on the appropriate civil penalty amount …

Hon. Carol B. Amon
4/24/2013

*City of New York v. Milhelm Attea & Bros.*, 2012 U.S. Dist. LEXIS 116533, *77, *96-97 (E.D.N.Y. Aug. 17, 2012). Based on this description, it is the City's understanding that the defendants have the burden at the hearing of coming forward with evidence challenging the penalty amount sought by the City, $7,301,830 against Gutlove and $7,480,872 against Pennisi. Thus, the City assumes that defendants will open the hearing with their testimony, to be followed by the City's testimony in rebuttal and further support of the requested penalty amounts. In discussions among counsel, the parties understood this to be the order in which the hearing would proceed and the City respectfully requests that the Court confirm that understanding.

The City similarly assumes that the following facts have already been found by the Court to be established on summary judgment and need not be re-proven at the penalty hearing: (1) "The City's presentation establishes that the vast majority, if not all, of the unstamped cigarettes the defendants sold to reservation retailers were resold to and consumed by non-Native Americans, and that any reasonable wholesaler would have been well aware of that fact," (2) the evidence "demonstrates that large quantities of cigarettes sold from the Poospatuck Reservation were trafficked into the City," and (3) "[S]ales records of Gutlove customer Peace Pipe Smoke Shop show that cigarettes were mailed directly to addresses in the City via phone and internet orders." *Milhelm Attea*, 2012 U.S. Dist. LEXIS 116533 at *21-23, *29. The City respectfully requests that the Court confirm this understanding as well.

**Affidavits** - The City withdraws its contention that defendants waived their hearsay objections to the affidavits listed as plaintiff's Exhibits 53-55 on the Joint Pre-Hearing Order by failing to raise such objections at the summary judgment stage. The exhibits are each admissible, however, because the City is not offering them for the truth of the statements therein. Instead, the affidavits, which were served on the defendants on December 8, 2008 and filed in this case on July 24, 2009 (PACER Doc. 241-13), are offered to prove that defendants were on notice of the affidavits' accounts of reservation-based bootlegging activity including (1) sales by defendants' reservation customers to bootleggers who transported the cigarettes to New York City and (2) a Gutlove employee's assistance to bootleggers in loading their vehicles with cigarettes and in avoiding detection by the police.

**Plaintiff's Exhibit 48** - The verified complaint in *Jonathan Smith v. Vincent Federico*, annexed hereto as Attachment A and listed on the Joint Pre-Hearing Order as Exhibit 48, will be admissible as a statement against interest under Federal Rule of Evidence 804(b)(3) if Jonathan K. Smith is "unavailable as a witness" as defined by that Rule. The FRE 804(b)(3) hearsay exception applies when the declarant is unavailable and the statement is one that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it . . . had so great a tendency to expose the declarant to civil or criminal liability." If Smith is "unavailable as a witness" (he is being subpoenaed to appear), the City intends to use the verified complaint for Smith's sworn statements admitting that on July 21, 2012 he was stopped by the Suffolk County Police near Hauppauge, NY, while transporting a truckload of unstamped cigarettes from Palmetto Wholesale Tobacco Distributors ("Palmetto") in South Carolina to the Shinnecock Smoke Shop on the Shinnecock Reservation. *See* Attachment A ¶¶ 2-3, 18, 26-29, 33, Verification. These statements expose Smith to both civil and criminal liability under the Contraband Cigarette Trafficking Act ("CCTA") in that he admits to possessing and transporting more than 50 cartons of unstamped cigarettes in New York State. *See* 18 U.S.C. §§ 2342, 2344, 2346. Accordingly, plaintiff's Exhibit 48 would be

Hon. Carol B. Amon
4/24/2013

admissible under FRE 804(b)(3) if Smith is unavailable as a witness. *See United States v. Saget*, 377 F.3d 223, 231 (2d Cir. 2004) (unavailable witness's statement admitting to trafficking guns with defendant admissible as against penal interest).

Even if not covered by FRE 804(b)(3), plaintiff's Exhibit 48 would be admissible under the "residual exception" of FRE 807. As a complaint sworn to by the declarant and signed by an attorney (subject to Rule 11 sanctions), the Exhibit bears the requisite "circumstantial guarantees of trustworthiness." The admissions for which the City seeks to use the Exhibit are material facts relevant to Pennisi's bad faith, as explained in more detail below, and would constitute the most probative evidence (other than Smith's live testimony) as to those facts. If Smith does testify, then the proposed exhibit would only be used, if necessary, for impeachment as a prior inconsistent statement or to counter a charge of recent fabrication. *See* FRE 801(d)(1).

**Outstanding Discovery Disputes with Pennisi** - In conferring further with Pennisi, the City has been able to resolve certain discovery disputes but not others, as described below. First, Pennisi has refused to produce Joseph and Salvatore Pennisi's personal tax returns from 2007 through the present, claiming they are not relevant to the penalty hearing. The returns are relevant, however, to the extent that these individuals intend to testify at the hearing, as they did in their depositions, that a portion of their compensation as reflected on Mauro Pennisi Inc.'s tax returns was not received by them personally, but instead went to pay taxes on the company's business income. *See* Transcript of Dec. 17, 2012 Deposition of Joseph Pennisi, at 113:22-117:5 (Attachment B hereto). Pennisi, Inc.'s tax returns and financial records show "compensation to officers" (i.e. Joseph and Salvatore Pennisi) totaling more than $5 million from September 2008 through August 2012, in addition to a similar amount in cash distributions to Joseph and Salvatore Pennisi. Given Pennisi's anticipated argument that the company is unable to pay a substantial penalty, the City intends to rely, in part, on the more than $10 million received by Messrs. Pennisi from the company since May 2008 to demonstrate Pennisi's ability to pay a substantial penalty and to show that any claims of inability to pay by Pennisi should be given no weight. *See e.g. SEC v. Inorganic Recycling Corp.*, 2002 U.S. Dist. LEXIS 15817, at *12 (S.D.N.Y. Aug. 22, 2002) (refusing to reduce amount of civil penalty or disgorgement "simply because a swindler claims that she has already spent all the loot and cannot pay"). To the extent Pennisi intends to counter this argument with testimony that some of Messrs. Pennisi's reported compensation from the company was used to pay taxes solely on the company's income, the City is entitled to discovery that would allow it to verify such a claim. The tax returns produced by Pennisi (those of Mauro Pennisi, Inc.) do not provide such information, but Joseph Pennisi testified at his deposition that his and Salvatore Pennisi's personal tax returns would. *See* Attachment B at 116:1 – 117:5. Accordingly, the requested personal tax returns are relevant.

As an accommodation, the City offered to receive and review the personal tax returns subject to an appropriate confidentiality agreement (for instance, requiring copies to be returned or destroyed at the end of litigation) and to create a stipulated summary of relevant information in lieu of using the returns themselves as a hearing exhibit. In the alternative, the City proposed that Pennisi stipulate not to make any contention or present any evidence or testimony to the effect that the amounts shown on the Mauro Pennisi, Inc. tax returns or financial records as "compensation to officers" or as distributions were in fact used to pay taxes on Mauro Pennisi, Inc.'s business income, in which case the personal returns would not need to be produced. In response, Pennisi stated that it believes the returns are irrelevant and will not

Hon. Carol B. Amon
4/24/2013

produce them. The City requests that Pennisi be precluded from presenting testimony or evidence going to the points set forth above, consistent with Pennisi's position that the returns are not relevant. In the alternative, the City requests that the Court order Pennisi to produce the returns.

The second discovery dispute concerns Pennisi's refusal to produce "Any written communications or documents sent to or received from Palmetto Wholesale Tobacco Distributor (including communications or documents sent to or from Jonathan Smith, relating to Palmetto)" and "Any written communications to or from the South Carolina Department/Division of Taxation and Finance." Pennisi again refused these requests on the basis of relevance. As explained by the City at the April 16 pre-hearing conference, these documents are potentially compelling proof of Pennisi's bad faith. After Pennisi was forced to end direct sales to its Indian Reservation customers by the June 2011 changes in the Tax Law, Jonathan Smith, proprietor of one of Pennisi's Shinnecock Reservation customers, proposed that Pennisi sell and ship unstamped cigarettes to a South Carolina business called Palmetto Wholesale Tobacco Distributor that Smith owned and operated. *See* Transcript of Dec. 18, 2012 Deposition of Salvatore Pennisi, at 22:3-24:6, 25:1-27:3 (Attachment C hereto). Pennisi accepted Smith's offer and began selling cigarettes to Palmetto. *Id.* Pennisi knew that Smith intended to transport the cigarettes back to the Shinnecock Reservation for sale to the public. As noted above, on July 21, 2012, Jonathan Smith was stopped by police in New York State while transporting cigarettes from Palmetto (supplied by Pennisi) to the Shinnecock Reservation. Accordingly, the requested documents would provide additional evidence of Pennisi's long-standing, intentional disregard of the tax laws and the CCTA.

Thank you for your consideration of this matter.

Respectfully submitted,

Aaron Bloom

cc: All Counsel of Record (by ECF)